Mr. Chief Justice Shabkey
delivered the opinion of the court.
The bill seeks to subject Bracy to the debt of complainants, as a trustee for Anthony Butler, their debt being named, and pro- . perly included, as they allege, in the instrument by which Bracy acknowledged to have received certain property, and agreed to apply it to the payment of certain debts, specified in the instrument. The instrument is filed as an exhibit, and it includes the debt due the complainants, under the name of “ the debt due the Port Gibson Bank.”
The answer admits the undertaking to pay certain debts, but denies positively that the debt due the Port Gibson Bank was one of them. It states, that the true agreement was contained in an instrument which the respondent had read, but charges, that the writing made an exhibit, was substituted by the fraud of Butler. That Butler, at the time it was signed, read it to respondent in presence of a witness, and omitted to read the debts due *313 to the United States Bank, and the Port Gibson Bank. That the respondent, supposing it had been read truly, and that it was the same writing- which he had. read, signed it, which he would not have done, had he known that it included these debts.
The answer is fully sustained by the proof. Hugh McGowen swears that he commenced reading the instrument, and Butler took it out of his hand, and said, as he had written it hastily, he would read it. He states positively,’ that the Port Gibson Bank debt was not read out, nor does he think the debt to the United States Bank was. He particularly remembers, that the debt to the Port Gibson Bank was not, because respondent had conversed with him on the subject of that debt, and had said he would not sign the instrument if that debt was included in it, and the witness believes that he would not have done so.
It seems, that this and other agreements were made between the parties, for the purpose of securing Bracy in the payment of large responsibilities which he had incurred for Butler; it was not a general agreement for the payment of all his debts, and we are forced to the conclusion from the answer and proof, that Butler insidiously imposed the agreement set out in the bill upon the respondent, instead of the true one. When he undertook to read it, he was bound to read it correctly, and not having done so, it was a fraud upon Bracy, for whose benefit, almost exclusively, the agreement had-been made. That Bracy was capable of reading it himself, cannot make any difference. He had once read •what he supposed to be the same instrument, and hearing the one which he signed, read over so as to correspond with the one he had read himself, his suspicions were not awakened against fraud. There is no ground for questioning the testimony, it is consistent throughout, and can leave no doubt as to the truth of the fact stated in the answer.
It is urged, that the chancellor erred in not decreeing an account. The bill calls upon Bracy to discover as to the amount of property received, and how he has disposed of it. He has answered fully, and shows that he disposed of the property, so far as it went, in discharging the debts lie' undertook to discharge, and that in truth the property fell short about ten thousand dol *314 lars, of the amoúnt of the legitimate objects of appropriation, which amount, he avers, Butler still owes him, in consequence of his having paid all the debts he undertook to pay. This disclosure, being a direct response to the discovery sought by -the bill, must be taken as. true; it is also sustained by the proof of- 'John H. Norton. There could,, therefore, be no use in decreeing an account, when the trust property has been exhausted, and when in fact, it has proved insufficient to pay the debts to which it was properly applicable. A decree to account should not be made, unless an indebtedness appears.
The decree of the chancellor must be affirmed.