BROYLES et al., Respondents, v. ABSHER, Appellant.

St. Louis Court of Appeals, April 26, 1904.

1. **PRACTICE: Pleading Non Est Factum: Signing Instrument Without Reading It.** While the legal presumption obtains that the party signing a written contract has read it and is acquainted with its contents, yet in an action between the original parties to a note, the maker may plead and prove that through his illiteracy, by the misreading of the paper to him, or other fraudulent device, an instrument other than the one he intended to execute was fraudulently substituted and his signature thereby wrongfully secured. Such evidence is admissible under a plea of *non est factum.*

2. ———: ———. The defense to an action on a note that the consideration for its execution was paid by another than the payee and it was made payable to the payee by fraud and without the knowledge of the maker, is not inconsistent with the plea of *non est factum.*

Appeal from Greene Circuit Court.—*Hon. J. T. Neville,* Judge.

REVERSED AND REMANDED.

*F. M. Mansfield, W. D. Tatlow & Perry T. Allen* for appellant.

(1) The pleading and proof in this case brings it within the rule that as between the original parties fraud may be shown in the execution of the instrument; in other words, a plea of *non est factum* can be based upon such fraud. Burrows v. Alter, 7 Mo. 424; Wright v. McPike, 70 Mo. 175; Lithographing Co. v. Obert, 54 Mo. App. 240; Nichols v. Young, 68 Mo. App. 448; Van Ravenswaay v. Ins. Co., 89 Mo. App. 73; Och v. Railroad, 130 Mo. 27; Ins. Co. v. Owen, 81 Mo. App. 201. (2) It has been expressly ruled in this State that where the signature to an instrument was obtained by fraud, deceit and imposition in its execution, such as misreading the instrument to an illiterate and ignorant person, or the substitution of another paper, and obtaining the signature by trick and fraud, that such evidence is admissible under the plea of *non est factum*. Corby v. Weddle, 57 Mo. 452; Wright v. McPike, 70 Mo. 175; Kingman & Co. v. Shawley, 61 Mo. App. 60; Lowe v. Crawford, 67 Mo. App. 150; Thomas v. Ramsey, 47 Mo. App. 84; White v. Meddlesworth, 42 Mo. App. 368.

*Harrington, L. O. Neider, J. W. Jackson* and *Thos. H. Musick* for respondent.

(1) Being sued by the payee of the note, defendant, if he considered he owed the note to another, had a clear and perfect remedy and protection in a bill of interpleader. 3 Pomeroy's Eq. Juris. (1 Ed.), p. 343, secs. 1319 to 1328 and notes; State ex rel. v. Kumpff, 62 Mo. App. 332; Glasner v. Wiesberg, 43 Mo. App. 214; Franco-American L. & B. Assn. v. Joy, 56 Mo. App. 433. (2) The second answer to contention of appellant is that the fraud, if any there was, did not damage him any, and only he who is damnified by fraud, can set it up. If there was damage it was suffered by Anderson Absher, and only his representative can set it up. 8 Am. & Eng. Ency. of Law (1 Ed.), p. 635-655 and notes; 2 Pomeroy's Eq. Jur. (1 Ed.), sec. 873;

Brownlee v. Hewitt, 1 Mo. App. 360; Bank v. Crandall, 87 Mo. 208; Bank v. York, 89 Mo. 369; Smith v. Dye, 15 Mo. App. 585; Funkhouser v. Ingles, 17 Mo. App. 232. And the legal presumption, subject to rebuttal, is that the holder of a note is the owner. Toledo Agr. Works v. Heisser, 51 Mo. 128; Grelle v. Loxen, 7 Mo. App. 97; Shirts v. Overjohn, 60 Mo. 305; Braly v. Henry, 12 Pac. (Cal.) 623; Took v. Newman, 75 Ill. 215.

## STATEMENT.

This, an action upon a promissory note purporting upon its face to be executed by appellant payable to the order of respondent under her maiden name of Bettie Absher, one day after its date, January 29, 1894, was brought in the Wright county circuit court, and on application of defendant, by change of venue was transmitted to the circuit court of Greene county, where a non-jury trial, after intermediate proceedings adverted to, resulted in judgment for plaintiff, from which defendant has appealed.

The answer verified by affidavit of defendant, embodied a general denial, and specifically denied any indebtedness to plaintiffs or that defendant had ever executed the note in suit. Proceeding, the answer contained averments that the note was not the property of the plaintiffs, and that they had no right or interest therein, but was the property of the estate of Anderson Absher deceased, in his possession at the time of his demise, found among his private papers and assets at time of taking the inventory of his estate and under misapprehension of the facts, delivered to plaintiff, Bettie Broyles, who received it knowing she was not its owner, but that it was the property of the estate of said Anderson Absher. That about the time of execution of the note, defendant borrowed from his father, Anderson Absher, the amount of the note and gave his note therefor, at which time plaintiff and defendant's other sister, Izora, were living with their father, then eighty-

six years of age, very feeble in mind and body, and who could neither read nor write and who was unaware that the note was being made payable to plaintiff; that the sister, Izora, wrote the note at the request of her father, but plaintiff for purpose of defrauding him caused the note to be made payable to herself instead of him, although the money borrowed was the money of Anderson Absher and not of plaintiff. That defendant is barely able to write his name, the note was not read to him, nor did he read it at the time of signing his name and he had no knowledge that it was made payable to plaintiff, Bettie Broyles. That the first information he had that the note had been drawn to order of plaintiff and plaintiff claimed same was subsequent to the death of his father, after an inventory of his estate had been taken and the note found among his private papers. That subsequently plaintiff recognized and acknowledged that the note in suit was an asset of the estate of said Anderson Absher, deceased, when she commenced a suit in the probate court of Wright county against the estate of Anderson Absher, for services alleged to have been rendered as his housekeeper and servant, giving the estate credit therein for the note in suit, which had been delivered to her by the administrator, thereby recognizing that it belonged to the estate and alleging she had received it in part payment of her alleged claim against such estate. That upon trial in the probate court of such cause prior to the commencement of this action, final judgment was adverse to plaintiff. Plaintiff's motion to strike out all of above answer except the plea of *non est factum* for the reason that it was irrelevant, set out no defense to plaintiffs' action, and was inconsistent with such plea of *non est factum,* was sustained by the court.

The testimony of plaintiff, Bettie Absher Broyles, was to the effect that defendant signed the note in her presence, and subsequent to her marriage, but prior to the death of her father in presence of her husband, had

promised its payment.   On cross-examination she de-
posed, that her father was ill in bed, and while her sis-
ter Izora drew the note, the defendant was alone with
her when he attached his name thereto, and that the
money which she had earned at home by work and from
sale of live stock given her by her father, she took from
her trunk and handed to defendant, who was then on
friendly terms with her and at time she married but
had been unfriendly a year preceding their father's de-
cease.   She was further interrogated respecting state-
ments in an earlier trial of the case and remarks made
by her to her sister regarding changes in the name of
payee of the note itself from her sister's Christian name
to her own full name, all of which she denied, and af-
firmed her recollection failed, whether she had testified
that she had turned over the note to her father for col-
lection, or whether, in fact, she had done so. She also de-
nied making affidavit to the demand preferred against
her father's estate.

Two other witnesses were introduced by plaintiff
who had not testified at former trial though in attend-
ance, that as far as they remembered, they had seen
the same note at plaintiff's house prior to death of Mr.
Absher.

In support of the defense, Izora Gregory, formerly
Absher, testified that their father died in December,
1897, was about eighty-four years of age, and had been
very feeble for two years and not able to wait on him-
self.   That he was uneducated, unable to read, write or
count money, which he usually had to loan and fre-
quently loaned to his children, taking their notes, and
the witness usually wrote such notes and frequently at
instance of her sister would make the notes payable to
herself or to her sister, of which their father remained
in ignorance, believing the notes were made payable to
himself.   The witness identified the note in suit and
testified she drew it at the request of her sister payable
to her, notwithstanding that the money was the prop-

erty of their father, and that to best of affiant's knowl-
edge he believed at the time the note was drawn, that
it was made payable to him, that the money belonged
to and was borrowed from him and was not the money
of plaintiff. That her father did not direct her to make
the note payable to her sister and the note was found
in possession of their father among his private papers,
after his decease, prior to which event she never heard
her sister claim the note or assert defendant was in any-
wise indebted to her. She further deposed, that for
some time prior to the execution of the note, to her
knowledge her brother and sister were unfriendly, nei-
ther talking to each other nor having any business
transactions. This inimical relation was confirmed by
a brother, who further stated he was intimately ac-
quainted with his father's affairs, and corroborated his
debilitated situation, his illiteracy and reliance on his
daughter Izora to write for him. He also said it was
the custom of their father to give his children money,
that his estate might be divided before his death, and
the note involved had been found among his father's
effects at his decease. That in no instance to affiant's
knowledge, had his father taken notes for collection, or
transacted business for others, even his children, and
the witness had been very closely associated with plain-
tiff up to the time of their father's death, and never
heard her claim that he had any note belonging to her,
or other parties, among his effects.

The testimony of a sister of the half-blood was in-
troduced by defendant in form of affidavit for continu-
ance, to the effect that she had borrowed from her fa-
ther one hundred dollars and given her note therefor,
drawn at plaintiff's instance payable to plaintiff, al-
though the money belonged to their father, was bor-
rowed from him and he believed all the time the note,
which was found at his death among his private effects,
was drawn payable to him as it should have been, in
lieu of payable to plaintiff. That when plaintiff at-

tached her signature to the note, it was not read to her nor did she examine it but believed it payable to her father and the first information she had to the contrary was subsequent to his death, when after inventory of his estate, the note having been found among his papers, plaintiff claimed it.

A witness to the inventory stated he remembered the note in suit being found among the papers of the deceased and there was some doubt as to its signature: so at request of the administrator he made a memorandum of it as of other notes found among the papers of deceased, payable to other parties, consisting of three in all, each for one hundred dollars, one to order of Izora Absher by defendant, the remaining two, inclusive of note in suit to order of plaintiff, one by defendant and the other by the half-sister above mentioned.

Defendant, in his own behalf, swore that he never borrowed any money from his sister, the plaintiff, but when he wanted money, obtained it from his father and gave him a note therefor and he so obtained this money, no one else being present at the time about the house, and he heard no more of it till after his father's death, that at the date of the note and for five years prior to her marriage, his sister and himself were not on friendly or speaking terms, and when he went to the house she would leave the room. On cross-examination he deposed that he could not read anything he signed for his father, and he had received the money and believed the note was to his father or he would not have signed it and he could read no writing but his own name.

The administrator, a brother of the parties litigant, deposed that he could neither read nor write, that he gave the note to his sister under threat of suit by her.

Defendant then offered the statement of the cause of action filed by plaintiff in the probate court of Wright

county, in which she gave credit for the note in suit and rested.

In rebuttal plaintiff tendered a former note of date February, 1886, for same sum purporting to be made by defendant to plaintiff; and defendant resuming, offered the list of notes found among the effects of the deceased, and the testimony of plaintiff at former trial identifying the note in suit as a credit in demand against her father's estate, admitting it to have been among his papers at his death, asserting that it had been left with him for collection by her husband, and containing testimony in various regards contradictory of and not in harmony with her statements in the present hearing.

After all the evidence had been introduced the court gave as declarations of law, the following:

"The court declares the law to be that if defendant signed the note in suit, the finding should be for plaintiff, although the court may further find from the evidence that the money borrowed by the defendant, and for which he executed the note in suit, was the money of Anderson Absher and not that of the plaintiff, and that plaintiff caused her name to be inserted in said note as payee without the knowledge or consent of the defendant or the said Anderson Absher, and in the determination of this case all the evidence offered by the defendant, tending to prove that the money borrowed by the defendant, and for which he executed the note in suit, was the money of Anderson Absher, and not the money of the plaintiff, and that her name was inserted in said note without the knowledge of the defendant of the said Anderson Absher, will be excluded from the consideration of the court."

And gave, at instance of defendant, his first declaration embodying that the plea of *non est factum* and the denial of plaintiff's ownership were consistent defenses to the action, but refused the following:

"1. That under the law and evidence in this case, the finding and judgment should be for the defendant.

"2. That although plaintiff's name appears as payee in said note, yet, if it further appears from all the facts and circumstances in evidence, that her name was inserted in said note as such payee without the knowledge and consent of the defendant, then the finding should be for the defendant.

"3. That if all the facts and circumstances in evidence in this case, show to the reasonable satisfaction of the court that the money borrowed by the defendant, and for which he executed the note in suit, was the money of Anderson Absher, and that the plaintiff caused her name to be inserted in said note as payee without the knowledge of the defendant."

Plaintiff then moved for judgment upon the pleadings and the evidence of defendant, that he had executed and delivered the note for the consideration of money borrowed, and the court, sustaining such motion, rendered judgment for plaintiff.

REYBURN, J. (after stating the facts).—From the above synopsis of the pleadings and the proof, it is manifest that plaintiff relied on no derivative title to the instrument, and the testimony of the numerous witnesses combating her explanation of the possession of the note, fortified by her own irreconcilable testimony at former hearing of the case, together with its allowance as an item of credit in her claim against her father's estate, establish beyond question that the note was among her father's assets at time of his demise and passed into the possession of his administrator as part of his estate. The proof is also overwhelming that the money borrowed was the property of the father and the note intended to be drawn to him, although in deference to the prevailing rule forbidding an appellate court to consider the weight of the evidence, we might hesitate to reverse the case solely because the judgment is

not supported by the preponderance of the evidence. In the light of the fact that the court struck out those portions of the answer pleading the procurement of the note by fraud in the wrongful substitution of the plaintiff's name as payee in lieu of that of the lender of the money, and the trial judge would seem to have yielded to the assumption that such defense was at variance with the plea of *non est factum* set up earlier in the answer, although the court, in its declaration of the principles of law, recognized that such plea was not repugnant to the challenge of plaintiff's ownership of the instrument. While the legal presumption obtains that the party attaching his signature to the written embodiment of the contract, has read it as he is obligated to do, and is acquainted with its contents, yet between the original parties to the instrument, defendant may plead and establish by proper proof, that through his illiteracy by the misreading of the paper to him or other fraudulent device, an instrument other than the one understood and intended by him to be executed was fraudulently substituted and his signature thereto wrongfully secured. Corby v. Weddle, 57 Mo. 452; Law v. Crawford, 67 Mo. App. 150; Kingman v. Shawley, 61 Mo. App. 54. Such evidence is not addressed in variation of a written instrument, but assails its actual execution and is admissible under a plea of *non est factum*. Such is the legal rule prevailing even respecting instruments under seal thereby importing a legal consideration. "Fraud in the execution of the instrument has always been admitted in a court of law, as where it has been misread or some other fraud or imposition has been practiced upon the party in procuring his signature and seal." Hartshorn v. Day, 19 How. 223, quoted approvingly in Och v. Railway, 130 Mo. l. c. 41. That such evidence of fraud in relation to the execution of the instrument should be received, has been the rule approved in this State from an early date in Burrows v. Alter, 7 Mo. 424, and such

is the rule recognized at this time, alike by the Supreme Court and this court.    Och v. Railway, supra; Van Ravenswaay v. Ins. Co., 89 Mo. App. 73; Phoenix Ins. Co. v. Owens, 81 Mo. App. 201; Wright v. McPike, 70 Mo. 175; Nichols v. Young, 69 Mo. App. 448; Beck & Co. v. Obers, 54 Mo. App. 240.    See also George v. Tate, 102 U. S. 564.    The defenses sought to be interposed by the amended answer were not inconsistent with each other but in entire harmony; for the proof appropriate to sustain one defense did not tend to disprove the other.    If the plea of *non est factum* involved the actual signature of the paper, which is at best debatable (Hart v. Wire Co., 91 Mo. l. c. 422), such denial would be overcome by the general tenor of the answer conceding the genuineness of the name.    Price v. Morning Star, etc., Co., 83 Mo. App. 470.    The paragraphs eliminated from appellant's defense on motion of respondent constituted adequate and valid legal answer to the plaintiff's cause of action, and proof thereof should have been admitted; the theory of the trial court as gathered from the declarations of law was erroneous and the errors indicated necessitate a retrial.    Judgment is accordingly reversed and the cause remanded for trial not inconsistent with the views herein set forth.    *Bland, P. J.,* and *Goode, J.,* concur.