## TAIT, Respondent, v. LOCKE, Appellant.

St Louis Court of Appeals, March 31, 1908.

1. **PRACTICE: Verdict: Judgment Non-Obstante Veredicto.** Where a motion for judgment *non obstante veredicto* was filed after verdict and before judgment, it could be entertained by the court notwithstanding the clerk by mistake had entered judgment in accordance with the verdict.

2. **CONTRACTS: Fraud in Procuring Execution of Contract: Agency.** Where a party is induced to execute a contract by the fraud of the agent of the other party to the contract, the principal, whose agent perpetrated the fraud, and his assignee, are affected by the fraud so that they can not recover on the contract.

3. ———: ———: **Negligence in Failing to Read Contract.** A party, who fraudulently induces the signing of a contract and sues on it, can overcome a defense based on fraud in procuring the signature where the party signing was negligent in permitting himself to be deceived; for instance where the party signing the contract fails to read it and accepts the false statement of the other party as to what it contains.

4. ———: ———: ———: **Misreading Contract.** But where the agent of a company procured the signature of a party to a contract with the company by *misreading* the contract, and not merely by misstating its contents, the fraud is so serious that to condone it would be of a more injurious tendency than to condone the negligence of the signer, in an action on such a

contract it was error to exclude testimony offered by the defendant to show that he signed the instrument believing it to be different from what it was and was induced to sign it by the false reading of it by the agent of the plaintiff's assignor.

Appeal from Lawrence Circuit Court.—*Hon. F. C. Johnston,* Judge.

REVERSED AND REMANDED.

*Joe French* for appellant.

(1)   The first error complained of is that the court erred in refusing to admit competent and relevant testimony.   To-wit: the testimony of defendant Locke, and refused to admit in testimony specimen copies of said books showing them not to be what they were represented, when defendant has especially pleaded that the books were deficient and not as represented.   The rule that parol testimony cannot be received to vary a written contract, is not without exception.   And wherein the payee in a promissory note (and there is no more binding contract) by false representations as to the character of the paper, secures the makers signature, such facts may be shown.   Brown v. North, 21 Mo. 528; Palmer v. Insurance Co., 31 Mo. App. 471; Insurance Co. v. Owens, 81 Mo. App. 201; Broiles v. Absher, 107 Mo. App. 168.   (2) The code of procedure of this State makes no mention of a motion for judgment notwithstanding the verdict, but conceding that it might be resorted to under proper circumstances.   The court's action in this case was not warranted.   Such a motion *non obstante veredicto* can only be sustained when it appears from the record that the allegations in the answer constitute no defense to the action, and even then such a judgment can only be rendered in a clear case, made on the application of the plaintiff, after the verdict and before entry of judgment on the verdict.   Hurt v. Ford, 142 Mo. 296; 2 Tidd's Practice, 920; 1 Freeman on Judgments (4 Ed.),

sec. 7. (3) A judgment *non obstante veredicto* is upon the merits, and never granted but in a very clear case. 2 Tidd's Practice, 922; Lough v. Thornton, 17 Minn. 253; Friendly v. Lee, 20 Ore. 202. The sufficiency of the record must be determined by the answer and not by the evidence. The answer pleads *non est factum.* This may be done where defendant signed a contract thinking he was signing another paper. Carley v. Wedel, 87 Mo. 452; Wright v. McPike, 70 Mo. 175.

*R. H. Davis* for respondent.

(1) When a party, without fraud practiced upon him, signs a contract, he is presumed to know its contents and to accept the terms thereof, and the fact that he did not read it does not alter the rule. Catterlin v. Lusk, 98 Mo. App. 187; Leicher v. Kenney, 98 Mo. App. 405; Johnson v. Ins. Co., 93 Mo. App. 590. And it is a well-understood rule of law that falsely representing to a man in possession of all of his faculties and able to read, that a writing contains the verbal agreement and understanding, is not the fraud that the law means. Magee v. Verity, 97 Mo. App. 490; Crim v. Crim, 162 Mo. 552. (2) The record shows that the motion for judgment *non obstante* was filed immediately upon the return of the verdict of the jury and no error was committed in setting aside the verdict of the jury and entering judgment for plaintiff. The circuit courts of this State possess the common law power and jurisdiction to set aside verdicts and render judgments *non obstante veredicto.* Hurt v. Ford, 143 Mo. 283; Shreve v. Whittlesey, 7 Mo. 473; Dezell v. Fidelity & Casualty Co., 176 Mo. 253.

STATEMENT.—This action was on the following obligation:

"Aug. 24, 1906.
"Dr. F. C. Beach, Editor "Scientific American"
"Editor in Chief Scientific American Club.
"260 Fifth Ave., New York.

"Please deliver to my address, prepaid, one complete set of "The Americana" the contributors edition, consisting of sixteen volumes in half-Persian morocco binding for which I agree to pay $6.00 per volume.

"Subscriber's signature, W. W. Locke.

"Subscriber's business address.

"Subscriber's residence.

"Subscriber's City, Pierce City, Mo.

"Deliver at.

"W. W. Locke, Pierce City, Mo.

J. H. Harrington,

Salesman."

It will be observed the order was given to the Scientific American Club or Dr. F. C. Beach, editor of the Scientific American.    Subsequently the Scientific American Club was incorporated as the Scientific American Compiling Department.    J. H. Harrington, who took the order from defendant, was a traveling salesman for the aforesaid club and afterwards for the incorporated company.    The demand, amounting to $96, was assigned to plaintiff Tait, but it is not asserted that he enjoys any other rights under the assignment than belonged to the original promisee.    It is charged in the petition that defendant ordered a complete set of the Americana, and agreed to pay $6 a volume, or $96 in full; that said contract was taken in the name of the Scientific American Club for the use and benefit of the Scientific American Compiling Department; that the order was accepted and the books shipped to defendant, but he refused to accept or pay for them; that all rights accruing under the contract were assigned to plaintiff. In a verified answer the defendant denied he had executed the instrument sued on and alleged the facts connected with the execution of the instrument, to-wit: "that in August, 1906, he was solicited by the agent of the Scientific American Compiling Department to buy a set of Americana; that said agent read to him or

pretended to read to him, what purported to be the contract that he wanted him to sign; that said contract so read or pretended to be read, was for the Americana at the price of six dollars, which was to be sent to defendant, for his inspection, and if satisfactory, he should keep it, if not, it should be returned; that believing the said agent was truly reading the contents of the contract, when the said agent shoved it over to him, he signed either the one so pretended to be read, or one which was fraudulently substituted for the one he intended to sign, so that defendant says he never executed the contract, sued on in this case, notwithstanding the said contract bears his signature; that same was obtained through the fraud of said Scientific American Compiling Department and its agents." After pleading *non est factum* in the language quoted, the answer states the further defense that after a complete set of the Americana had been shipped to defendant, he examined the work and returned it to the company, prepaying the freight, because "the books were not what they were recommended to be, did not contain matter represented, but contained incorrect statements of events and locations of towns and countries." Harrington, the agent of the publishing company, entered the defendant's place of business, a mercantile establishment, August 20, 1906, and proposed to defendant to sell him an encyclopedia. The latter replied he was not interested because he had the Encyclopedia Brittanica and thought, from Harrington's description, the two works were about the same. Harrington said there was no comparison between the two as his books were complete and up to date in every respect. Locke swore he signed the contract without reading it, and his counsel offered to prove Harrington pretended to read over the contract, but this testimony was rejected because Locke swore he could read and the answer did not say he was illiterate. The attempt was repeated in various forms, to

prove defendant was induced to sign the contract without reading it by Harrington's pretending to read it to him. The purport of the offer of testimony is that Locke was busy and signed the instrument in suit, believing it expressed the true agreement between him and Harrington; i. e., that one volume of the work was to be sent for inspection; that Harrington read the instrument as if it stated such an agreement instead of the one actually stated. All this testimony was excluded and defendant's counsel excepted. Other offers to prove Harrington represented the books would contain a correct history of events, towns, countries and cities, and that those sent were incorrect in many respects and not as represented, were also rejected and exceptions saved. At the conclusion of the evidence the court, at plaintiff's request, instructed the jury that defendant had admitted signing the contract in suit, and if the jury believed the Compiling Department had signed all rights and claims thereunder to plaintiff, the verdict should be for him in the sum of $96. On behalf of defendant the court instructed that the instrument was not negotiable, could only be transferred by assignment and was subject to the same defense in plaintiff's hands as if the suit was by the company which first made the contract. The jury returned a verdict for defendant and on the same day, before judgment was given on the verdict, plaintiff filed a motion for judgment in his favor on the pleadings and evidence, notwithstanding the verdict. A few days later judgment was given in accordance with plaintiff's motion, the entry reciting the filing of the motion immediately on the return of the verdict and before judgment; that the motion was sustained and it was considered, ordered and adjudged the verdict of the jury be vacated and plaintiff have and recover of defendant the sum of $96. Prior to the date of this entry the clerk, in entering the verdict, had followed it with a judgment that plaintiff take nothing

by the action and defendant go hence without day, re-
cover from plaintiff his costs and have execution. From
the judgment entered pursuant to plaintiff's aforesaid
motion, defendant appealed.

GOODE, J. (after stating facts).—The point is
urged that a judgment *non obstante veredicto* can be
given only when the answer states no defense, and even
then must be given after verdict and before judgment;
hence that as the present record shows judgment went
for defendant on the return of the verdict, to give a
second judgment later, notwithstanding the verdict, was
error. But the record shows the motion for judgment
*non obstante* was filed before the court had pronounced
judgment. The misprision of the clerk in including a
judgment entry in the entry of the verdict could be
corrected by directing the lower court to set aside the
two judgment entries and then enter judgment *non
obstante*.

The main question is, was plaintiff entitled to judg-
ment *non obstante?* This depends on whether defendant
stated and offered proof of a defense. As regards the
testimony offered to prove the books did not come up to
the representation of the agent in respect of historical
and geographical accuracy, we find no reason to com-
plain of the ruling of the court. The answer does not
say what representation was made as to those matters,
or that any was fraudulently made, and neither does it
allege a warranty. The position seriously maintained
is that a valid defense was averred in respect of fraud
in procuring the execution of the contract. In stating
this defense the answer alleges the facts connected with
the signing of the contract. In effect it says the agent
of the company pretended to read to defendant what pur-
ported to be a writing expressive of the agreement be-
tween them, which agreement, as made and as read, was

that one volume of the "Americana" should be sent for defendant's inspection and should be paid for if satisfactory; if not, returned; that defendant believed the agent read the memorandum as it was written, and so believing signed the paper shoved over to him; that the paper signed was either the one the agent pretended to read, but read falsely, or another substituted in lieu of it.  No testimony was offered of a fraudulent substitution, the offer made conducing to prove only a misreading of the paper and that defendant, instead of reading it himself, relied on the veracity of the agent's reading. Plaintiff's counsel contends the answer states no defense, as it does not say defendant was unable to read, and that the testimony offered would not establish a defense, as it included no evidence of such inability.  In other words, granting the truth of what was pleaded and of the proof offered, defendant is bound by the contract because of his negligence in signing without reading. In dealing with this question it is to be remembered the suit on the instrument is by a plaintiff who neither has or claims a better standing than the original promisee would have, and not by an innocent third party who acquired the contract for value.  It is to be remembered, too, that whatever fraud occurred in procuring the execution of the instrument, was perpetrated by the agent of the company and therefore the latter, and plaintiff as its assignee, is affected by the fraud.  [1 Paige, Contracts, sec. 66; Martindale v. Harris, 26 Ohio St. 379.] The proposition on which plaintiff's counsel relies is that conceding these facts, the negligence of the defendant precludes him from challenging the contract on the ground that the memorandum was misread and he was thereby deceived regarding its effect.  The doctrine that a party who fraudulently induces the signing of an instrument and then sues on a contract contained in it, can overcome a defense based on the fraud by proving the signer was careless in permitting himself to be

deceived, is anomalous in that it punishes negligence instead of dishonesty. [1 Paige, Contracts, sec. 64.] But under certain circumstances it is accepted by some courts for reasons of public policy; i. e., to uphold the validity of obligatory writings. In Johnston v. Insurance Co., 93 Mo. App. 580, the majority of the court held the plaintiff bound by the terms of a written contract he had signed without reading and in reliance on the statements of the agent of the insurance company as to the contents of the writing. The point in decision was that a false statement of the contents or effect of a writing (not a false reading of it) whereby a party is led to sign, is not such fraud as will nullify the instrument. Magee v. Verity, 97 Mo. App. 468, 71 S. W. 472, is to the same effect; and see 1 Paige, Contracts, sec. 64 and cases cited in note 12. The argument for this doctrine is very cogent when the instrument has passed into the hands of an innocent purchaser for value, and especially when it is negotiable paper; for business is hampered if such written obligations may be impugned because of fraud in their inception. When the first promisee, or a transferee standing in no better light, seeks to enforce the contract shown by the writing, the argument is less impressive. Yet even in those instances something may be said against allowing the plea of *non est factum* and in favor of the absolute liability of the promisor, if he signed the paper relying on the reading of the promisee, though he might have read it himself. The point of difficulty is as to how far the law ought to go in prescribing what acts of imprudence on the part of the signer shall exclude the defense of fraud—exclude it, not out of deference to the knave, but because of the impolicy of permitting contractual writings to be impeached except on the most flagrant grounds; like forgery, duress or the incapacity of the signer. The tendency is for all defenses going to the genuineness of such writings, to degenerate finally into proving by oral evidence, agreements

the parties attempted to relieve from the uncertainty of that kind of proof. But greater harm might arise from refusing the defense of fraud in every case where such carelessness is to be imputed to the signer, because even men of business prudence cannot be prevented. from sometimes trusting parties with whom they deal. The general rule is, at least in actions between parties to a contract or transferees similarly situated, that fraud in inducing the signing of a memorandum or agreement which fails to state correctly the terms stipulated, will be a defense. [1 Paige, Contracts, sec. 63.] As to what will amount to fraud in this regard, the adjudications are not harmonious. Considered in its practical aspect, the question might be put in this form: When will the law deem it important to make the negligence of the signer the decisive fact, rather than the fraud of the promisee? This question touches the law of negligence as well as that of contracts, and is to be tested, in some measure, by the criterions applied in negligence cases. In the present case the defense of fraud cannot be rejected, unless the inference is irresistible that defendant failed to observe ordinary care to learn the contents of the paper in controversy before signing it. Even if this can be conceded (and in our opinion it cannot be) if we pronounce defendant liable, we must suffer the agent's fraud to prove effectual, lest, perchance, too great latitude will be afforded for challenging the validity of contractual instruments. We think to condone the fraud would be of more injurious tendency than to condone such negligence, if any, as marked defendant's conduct. We know of no case in which it was ruled that the actual misreading of a paper purporting to contain a contract, thereby inducing the signing of it was not a fraud which the signer might set up in defense, even though he could have read the paper himself. Such a betrayal of confidence is revolting and so infrequent that it is not likely to be anticipated. It perhaps

may be distinguished from a mere misrepresentation of the contents of a paper, because a statement of the contents is apt to be condensed so as to misinterpret the meaning of the original or be misunderstood by the hearer.	The case of Crim v. Crim, 162 Mo. 544, 63 S. W. 489, is greatly relied on by plaintiff; but the broad remarks contained in the opinion must be interpreted in the light of the facts before the court.	It was an action on a note given by the defendant to the plaintiff, and authorizing any attorney at law to confess judgment for the amount of the note.	The defense was that when the note was signed the signer was ignorant of the cognovit; but the evidence proved he had executed many such notes, that several judgments had been rendered against him under cognovits, and that *no representations were made to him about the character of the note when he signed it and there was no attempt to conceal its character from him.*	On those facts it was held no fraud, trick, or misrepresentation was used to procure the signature, and if the defendant did not read the paper before signing, he had full opportunity to do so and was presumed to know its contents.	It is true the opinion in that case disapproved this remark in the opinion in Wright v. McPike (70 Mo. 175) :

"As between the original parties, if one has procured the signature of the other to a written agreement, *whether by fraud or not,* which does not contain the contract made by the parties, but a different one, he cannot be permitted to avail himself of that contract, but must stand by the one which was in fact entered into by both parties."

We do not suppose the Supreme Court meant to say it is never ground for rescission, or relief in equity, in a suit between the original parties, that a contract was induced by material misrepresentations not amounting to fraud.	[1 Wharton, Contracts, sec. 214; 1 Paige, Contracts, sec. 69; Bispham, Equity (6 Ed.),

p. 305.] However, we are not concerned with this question because, in the present case, fraud is the essence of the defense; and Crim v. Crim, is no authority for the proposition that this defense cannot be established by proving the signature of a party was procured to an instrument by the opposite party misreading it to him. That this is an act of deception which will invalidate an instrument was stated in George v. Tate, 102 U. S. 564, in a passage approved by our Supreme Court in Och v. Railroad, 130 Mo. 27, 43, 31 S. W. 962.

The judgment is reversed and the cause remanded. All concur.