A. D. BIRDSALL, Respondent, v. BYRON H. COON, Appellant.

Springfield Court of Appeals, May 8, 1911. Motion for Rehearing Overruled, July 20, 1911.

1. **FRAUD: Misreading Contract: Right to Rely Upon Reading by Other Party: Negligence.** In an action on a contract for books sold to defendant, the defendant claimed that he thought he was buying an English edition of Disraeli and that the agent who sold him the books so read the contract, as to make it appear that he was buying an English edition; that the books were in fact an American reprint edition. It appeared that the defendant was a lawyer, perfectly capable of looking after his own interests and reading the contract, and that he was negligent in not doing so. There was evidence that the contract had been misread to the defendant. *Held,* that he had a right to rely upon the reading of the contract by the agent and if the agent fraudulently misread the contract for the purpose of deceiving defendant and did deceive him, this would be a defense in a suit on the contract.

2. **CORPORATIONS: Action on Assigned Contract: Pleading and Proof: Immaterial Variance.** In an action on a contract covering the sale of books, plaintiff alleged that the books had been sold to defendant by the St. Dunstan's Society, a corporation, and that the corporation had assigned the contract to plaintiff. Defendant denied under oath that the St. Dunstan's Society was a corporation. It did not appear from the evidence whether the society was a corporation or co-partnership,

but it did appear that the society had assigned the contract to plaintiff. *Held*, that the question of whether or not the society was a corporation was immaterial and if proven to have been a co-partnership, it would have been an immaterial variance between the allegation and the proof.

3. **EVIDENCE: Contracts: Death of One of Two Agents Making Contract: Other Party not Disqualified to Testify.** Where one party to a contract was represented at the making thereof, by two agents and one of those agents dies, this does not disqualify the other party to the contract to testify concerning the making thereof.

4. **CONTRACTS: Party Bound by Signature.** As a general rule a written contract is conclusively presumed to merge all prior negotiations and to express the final agreement of the parties; so when sued upon a written contract a party will not be permitted to admit that he signed it and then deny that it expresses the agreement he made, or claim that he did not read it or know its stipulations.

5. **FRAUD: Misreading Contract: Negligence.** Although one party to a contract could have read the contract for himself but he relied upon the other party who fraudulently misread the contract, this fraud may be set up as a defense, notwithstanding the fact that the first party was negligent in failing to read the contract. The rule might be different where the party reading the contract was negligent only in the reading thereof, because the negligence of one would offset the negligence of the other.

6. ———: ———: **Misstating Contents: Right of Other Party to Rely on Reading and Interpretation: Negligence.** There is a distinction between the fraudulent misreading of a contract by one party for the purpose of obtaining the signature of another party, who is perfectly able to read the contract for himself, and the mere misstatement of the contents of the contract. In the first case the party to whom the contract is read may defend on account of the fraud even though negligent in not reading the contract; in the second case he cannot altogether rely upon the other party's interpretation of the contract.

7. **APPEAL AND ERROR: Bill of Exceptions: Sending to Printer: Responsibility of Attorney.** The practice of taking records and bills of exceptions from the clerk's office to a printing office, there to be taken apart and scattered about, is subject to criticism, and the attorney so taking records must be held responsible therefor.

Appeal from Jasper Circuit Court.—*Hon. D. E. Blair,* Judge.

REVERSED AND REMANDED.

*R. A. Mooneyham* and *I. N. Threlkeld* for appellant.

(1) Before admitting the contracts and assignments of the St. Dunstan's Society in evidence, plaintiff should have been required to prove the corporate existence of said society and also to establish by competent evidence the authority of the officers of said corporation to execute and deliver the contracts so assigned. R. S. 1899, sec. 746; Hyde v. Larkin, 35 Mo. App. 365; Hutchinson v. Green, 91 Mo. 367; Calumet Paper Co. v. Haskell Co., 144 Mo. 331; Ferguson v. Trans. Co., 79 Mo. App. 352; Dignan v. Throughman, 88 Mo. App. 62. (2) Appellant insists that he should have been permitted by the court to prove his allegations of fraud, under the issues joined in the pleadings, and that the facts proved should have been submitted to the jury. Tate v. Locke, 130 Mo. App. 283. (3) Appellant insists that he should have been permitted to explain by parol evidence the illegible parts of said alleged contract, since the edition, character, workmanship, etc., was in issue and also to explain by parol evidence any ambiguous terms of said alleged contract, and cites in support of his contention: Brown v. North, 21 Mo. 582; Palmer v. Ins. Co., 31 Mo. App. 471; Ins. Co. v. Owens, 81 Mo. App. 201; Brozlec v. Ashens, 107 Mo. App. 168; Tate v. Locke, 130 Mo. App. 273. (4) The rule that parol testimony cannot be received to vary a written contract is not without exceptions and where the payee in a promissory note (and there is no more binding contract), by false representations as to the character of the paper secures the makers' signatures, such facts may be shown. Davis v. Scovern, 130 Mo. 303; Lumber Co. v. Warner, 93 Mo. 374; State ex rel. v. Hoshaw, 98 Mo. 358; Wright v. McPike, 70 Mo. 175.

*McReynolds & Halliburton* for respondent.

(1)   Plaintiff having entered into a contract with St. Dunstan's Society by its corporate name, obligating himself to pay said society a certain amount of money for certain books, admits its corporate capacity and cannot in an action on said contract plead *nul tiel* corporation, being estopped by said contract from making such plea.   Benevolent Society v. Fitzwilliams, 12 Mo. App. 445; Land Co. v. Railway Co., 161 Mo. 604; 2 Morawetz, Priv. Corp., secs. 750, 753; 1 Beach. Priv. Corp., sec. 13; Railroad v. McPherson, 35 Mo. 13; Ins. Co. v. Needles, 52 Mo. 18; St. Louis v. Shields, 62 Mo. 247; Stoutemore v. Clark, 70 Mo. 471; Studebaker Bros. v. Montgomery, 74 Mo. 101; Gas Light Co. v. St. Louis, 84 Mo. 202, 11 Mo. App. 55; Broadwell v. Merritt, 87 Mo. 95; Mining Co. v. Richards, 95 Mo. 106; Hasenritter v. Kirchoffer, 79 Mo. 239; Regan v. McElroy, 98 Mo. 349; Reinhard v. Mining Co., 107 Mo. 616.   (2)   The position of defendant in his answer and at the time of trial was that a verbal agreement had been made with him by the agent of St. Dunstan's Society, whereby he represented Disraeli was an English edition, said St. Dunstan's Society to pay all import duties.   According to his testimony this representation was antecedent to the signing of the contract.   In these circumstances the plea that he did not read it comes too late to avail as a defense.   Campbell v. Van Houten, 44 Mo. App. 231; Magee v. Verity, 97 Mo. App. 486; Catterlin v. Lusk, 98 Mo. App. 182; Robinson v. Jarvis, 25 Mo. App. 421; School District v. Ins. Co., 61 Mo. App. 597; Shanley v. Gas Co., 63 Mo. 123; Paris Mfg. Co. v. Carle, 116 Mo. App. 581; Powell v. Price, 111 Mo. App. 320; Ins. Co. v. Winn, 125 Mo. App. 384.   (3)   The written contract is conclusively presumed to merge all prior negotiations and to express the final agreements of the parties.   To permit a party, when sued on a written contract, to admit he signed it, but deny it expresses the agreement he made, or to allow him to admit he signed it but did not

read it or know its stipulations, would destroy the value of all written contracts. Boulware v. Automobile Co., 134 S. W. 9; Crim v. Crim, 162 Mo. 544; Catterlin v. Lusk, 98 Mo. App. 187; Tracy v. Ironworks, 29 Mo. App. 324, 104 Mo. 193. (4) Failure of a person not being ignorant, or under disability or infirmity to read an instrument or inform himself of its contens, is his own fault, and is not sufficient to overcome its legal effect. Gwin v. Waggoner, 98 Mo. 327; Campbell v. Van Houten, 44 Mo. App. 237; Penn v. Brashear, 65 Mo. App. 27; International Text Book Co. v. Lewis, 130 Mo. App. 158. (5) A person who can read should read an instrument before he signs it, and if he does not exercise such prudence and is deceived, there is no legal fraud. Teachout v. Clough, 143 Mo. App. 487; Nicol v. Young, 68 Mo. App. 453; United Breeders' Co. v. Wright, 134 Mo. App. 717, 139 Mo. App. 195.

GRAY, J.—This suit was instituted to recover from defendant sums claimed to be due plaintiff on a book deal. The petition is in two counts. The first on a contract made by defendant with plaintiff for the purchase of books, amounting to eighty-five dollars to be paid for at five dollars per month. The cause was tried before a jury, and defendant was allowed the full amount claimed for the defective books, and as no appeal was taken by plaintiff, it will not be necessary to make further mention of the first count.

The second count is on a contract alleged to have been made between defendant and St. Dunstan's Society, for books, including one set of Disraeli, for $180, payable in monthly installments of ten dollars each. The defendant paid fifty dollars on the books, when he refused to pay any more, claiming that he was sold an English Edition of Disraeli, and that the set delivered was an American reprint.

The petition alleges the making of the contract between defendant and St. Dunstan's Society, a corpora-

tion organized under the laws of New York; that shortly after the making of the contract the same was sold and assigned to plaintiff by the St. Dunstan's Society, and that the books were delivered and defendant had paid thereon the sum of fifty dollars, praying judgment for the balance.

The answer, in addition to a general denial, admitted the signing of the contract, but alleged that at the time the contract was made, there were present Hamilton Linden and A. S. Coyle, representatives of the St. Dunstan's Society, and acting in behalf of said society; that the defendant was solicited to buy an English Edition of Disraeli; that Linden read to the defendant what purported to be a contract for an English Edition of Disraeli; that the defendant, believing that Linden correctly read the contents of the contract, and being deceived thereby, and relying on the correct reading of the contract by Linden, signed the same; that the books were delivered and defendant paid thereon the sum of fifty dollars before he discovered that the set of Disraeli so shipped and received by him was not the English Edition, but an American reprint edition; that as soon as he discovered the fraud perpetrated upon him, he immediately notified the St. Dunstan's Society that he would not accept the books, and demanded the return of the fifty dollars so paid. There was filed with the answer an affidavit of the defendant, stating that the facts set forth in the answer were true, and denying that St. Dunstan's Society was a corporation.

The plaintiff offered no testimony tending to prove that St. Dunstan's Society was a corporation, but did prove that a short time after the contract was made, Linden, who was the agent of St. Dunstan's Society, presented the contract to plaintiff, containing an assignment written thereon, purporting to be signed by St. Dunstan's Society by G. E. Wagner, treasurer. Mr. Wagner's deposition was taken and he testified that he was the president and treasurer of the St. Dunstan's

Society, but he gave no testimony that it was a corporation or that it had sold or assigned the contract to plaintiff. The plaintiff also offered testimony that he paid the St. Dunstan's Society for the contract, and that the books were shipped to him, and he, in return, shipped the same to defendant.

The defendant offered testimony tending to prove that he was introduced to Linden by Coyle, and was solicited to buy certain books for $180, including an English Edition of Disraeli; that he was shown a prospectus of the books, and while examining the same, Linden prepared the contract and read it to him, and that in so doing, Linden misread the contract, and that relying on the correct reading of the contract by Linden, he signed it without reading it for himself.

The court excluded the testimony as to any conversations between the parties previous to the execution of the contract, but held that defendant might show that the contract was misread by Linden. When defendant, however, offered to prove what Linden said in reading the contract, the plaintiff objected on the ground that Linden was dead, and defendant was an incompetent witness to prove what Linden said in reading the contract. At the conclusion of the testimony, the court instructed the jury to find for the plaintiff for the full amount due on the second count, and to find for the plaintiff on the defendant's counterclaim for the return of the fifty dollars paid by him. The defendant appealed to this court.

The action of the trial court is assailed on several grounds. First: Appellant contends there was no proof that St. Dunstan's Society was a corporation, or that any assignment was ever made to plaintiff by any one authorized to make it. The suit is not by the St Dunstan's Society, but by plaintiff, who claims to be the assignee of the contract. Our statute requires the suit to be brought in the name of the real party in interest. It makes no difference whether the St. Dunstan's Society was a corporation or not, if the plaintiff is the owner of

the contract. And if the St. Dunstan's Society was a copartnership, it would be an immaterial variance between the allegation and the proof. There was evidence that plaintiff purchased the contract from the general agent of St. Dunstan's Society, and that the contract purported to be assigned by the Society; that the purchase by plaintiff was recognized by St Dunstan's Society, from the fact that the books were not shipped by said Society to the defendant, but were shipped to plaintiff, and by plaintiff shipped to defendant. The defendant offered testimony, which, if offered for the purposes, would have tended to contradict the plaintiff's proof upon this point. We refer to letters written by St. Dunstan's Society to defendant more than a year after plaintiff's evidence shows he purchased the contract demanding balance due on the books. The letters were not only declarations of St. Dunstan's Society that it still owned the contract, but they were signed "St. Dunstan Society, per A. D. Birdsall," (this plaintiff), and thereby were admissions of the plaintiff that St. Dunstan's Society was the owner of the contract. The letters, however, were not offered for the purpose of showing that plaintiff had not acquired the contract, but for the purpose of proving that the set of Disraeli purchased was to be an English Edition. The attention of the trial court was not called to the fact that they were admissible to disprove the ownership of the contract, but the sole complaint against the action of the court in refusing to admit the letters was based upon their admissibility to prove fraud in the execution of the contract.

It is next claimed by the appellant that the court erred in refusing to permit him to show that the contract was misread to him. We have examined the abstract of record, and find that the trial court excluded the testimony on the ground that Linden, the agent of St. Dunstan's Society, with whom the defendant made the contract, was dead, and therefore, defendant was not a competent witness to prove the contract.

It is true at first the court did hold the testimony was not competent, for the reason that the defendant was a lawyer of experience and in full possession of all his faculties, and did not have the right to rely on the reading of the contract by the agent, but was conclusively bound to know what was in it at the time he signed it. The record, however, shows that at the time the court made this ruling, it was through a misunderstanding as to what was the purpose of the testimony. The respondent tried the case on the theory that defendant was conclusively bound by his contract and had no right to rely on a correct reading of it by the agent of the other contracting party. Upon this point we find the following in defendant's testimony:

"Q. Now, Mr. Coon, this contract marked Exhibit 2, I will ask you if when that contract was read to you whether it was misread and if so in what particular?"

Objection by plaintiff's attorney: "I object to that, for the reason this defendant has testified here—he is a man of education and learning, able to read, and there was nothing to prevent his reading the contract. He signed one, delivered it to them and kept a duplicate, and it doesn't lay in his mouth to say he was misled into signing that contract.

"The court: There is a case in the one hundred and thirtieth where a contract was misread; they hold if it was misread to him, it might be a fraud.

"Mr. Halliburton: We object for the further reason that the party who is purported to have read this contract to him is dead.

"Mr. Mooneyham: Yes, sir, but it was also read in the presence and hearing of Mr. Coyle, who was also an agent for the St. Dunstan's Society; he is not dead.

"The court: I think I will sustain the objection. It is held that where one party to a contract is dead the other cannot testify to what he said."

In another part of the record, and in showing the views of the court, we find the following: "The sole

ground on which I think you could defend in this is that the contract was misread."

The contract was signed "Representative Coyle and Linden," and the evidence shows that at the time of the making of the contract the defendant paid ten dollars and a receipt was given to him by the St. Dunstan's Society, per Coyle. In addition to the above, the notice to the defendant by St. Dunstan's Society of the acceptance of his contract, was signed "St. Dunstan's Society, per A. S. Coyle." The evidence therefore shows that St. Dunstan's Society was represented in the making of the contract, not only by Linden, but by Coyle, who was living, so far as the testimony shows at the time the cause was tried.

If the defendant had the right to show as a defense that the contract was not binding on him because it was procured through fraud, to-wit: The misreading of it by Linden, then he was a competent witness therefor, notwithstanding the death of Linden, as Coyle was alive. [Vandergrif v. Swinney, 158 Mo. 527, 59 S. W. 71; Fulkerson v. Thornton, 68 Mo. 468; Williams v. Perkins, 83 Mo. 379.]

The statute relating to witnesses should be liberally construed to accomplish the purposes of its enactment, which was to disqualify a living party when the death of the other party necessarily places his side of the controversy at a disadvantage. We know of no case holding that where one party to a contract was represented at the making thereof by two persons, that the other contracting party is disqualified as a witness because one of such representatives is dead. We do not believe defendant was disqualified to testify on account of the death of Linden.

The error of the trial court in refusing to permit defendant to testify on account of the death of Linden was harmless, if the defendant was bound by his contract, notwithstanding the misreading of it by Linden.

The books are full of suits both at law and in equity, wherein parties have sought to be relieved from their written contracts. The general rule is correctly stated in respondent's brief as follows: "The written contract is conclusively presumed to merge all prior negotiations and to express the final agreement of the parties. To permit a party, when sued upon a written contract, to admit that he signed it, but to deny that it expressed the agreement he made, or to allow him to admit that he signed it, but did not read it or know its stipulations, would absolutely destroy the value of all contracts."

While the above is undoubtedly a correct statement of the general rule, yet a person is not bound by every contract containing his signature. And the books are full of opinions relieving persons where their signatures were procured by fraud. While the courts agree that a contract procured by fraud is not binding, yet they differ as to what constitutes fraud in procuring a signature to a contract. The conflict in the authorities may be traced to the opinions of Judges as to the policy to be adopted. If the Judge writing the opinion believed that it is better to "encourage negligence in the foolish than fraud in the deceitful," then a more liberal view is taken as to what constitutes fraud. On the other hand, if the judge writing the opinion believed that it is better to "encourage fraud in the deceitful," then the opinion is written with the view of upholding the contract.

In this state there is but little conflict in the authorities when the facts in the cases are considered. Our courts have held from the beginning that if a person was unable to read or write, either from the fact that he never learned, or his eyesight has failed, and on account thereof, was unable to protect himself, and the opposite party took advantage of his infirmity and procured a contract from him by misreading it or substituting one contract for another, the contract is void. On the other hand, our courts hold when a person in full posses-

sion of all his faculties signed a contract without read-
ing it, but relying upon the statement of the other con-
tracting party as to what it contained, the contract is
valid, notwithstanding the other party misstated the
contents thereof.  But neither of these situations meets
the case at issue.  It is true, the defendant was a law-
yer in full possession of all his faculties, and abundant-
ly able to take care of himself in making a contract, even
with a book agent, and the question is:  Did he have a
right to rely on a correct reading of the contract by the
agent?  We believe he did.

The very question was before the St. Louis Court
of Appeals in Tait v. Locke, 130 Mo. App. 273, 109 S.
W. 105, and it was answered by the following clear lan-
guage of Judge GOODE:  "We know of no case in which
it was ruled that the actual misreading of a paper pur-
porting to contain a contract, thereby inducing the sign-
ing of it was not a fraud which the signer might set up
in defense, even though he could have read the paper
himself.  Such a betrayal of confidence is revolting and
so infrequent that it is not likely to be anticipated.  It
perhaps may be distinguished from a mere misrepre-
sentation of the contents of a paper, because a statement
of the contents is apt to be condensed so as to misinter-
pret the meaning of the original or be misunderstood by
the hearer.  We think to condone the fraud would be of
more injurious tendency than to condone such negli-
gence, if any, as marked defendant's conduct."

The Supreme Court of this state in Och v. Railroad,
130 Mo. 27, 31 S. W. 962, recognized the same doctrine,
and quotes approvingly from George v. Tate, 102 U. S.
564, wherein it was said:  "It is well settled that the
only fraud permissible to be proved at law in these cases
is fraud touching the execution of the instrument, such
as misreading, the surreptitious substitution of one
paper for another," etc.  And also from Hartshorn v.
Day, 19 Howard, 223, where it is said:  "Fraud in the

execution of the instrument has always been admitted in a court of law, as where it has been misread."

In Broyles v. Absher, 107 Mo. App. 168, 80 S. W. 703, it is also held that the actual misreading of an instrument is evidence of fraud in its procurement.

In Wells v. Adams, 88 Mo. App. 215, the Kansas City Court of Appeals declares the rule as follows: "While it is true that where one signs an instrument he must read it, if he can read, or have it read if he can not, yet this rule does not operate where a trick or artifice is resorted to for the purpose of preventing him from reading or having it read to him. And where one of the contracting parties can read and does not read a contract before signing it, but relies on the other party for a knowledge of its contents upon the reading of the other party, he can have relief. It is certainly not just that one who has perpetrated a fraud should be permitted to say to the party defrauded, when he demands relief, that he ought not to have believed or trusted him."

The rule declared by Judge GOODE in Tait v. Locke, supra, is not in conflict with any other decision in this state that we have been able to find, and is undoubtedly supported by the great weight of authority. [Western Mfg. Co. v. Cotton & Long, 104 S. W. 758, 12 L. R. A. N. S. 427; Stewart v. Roberts, 110 S. W. (Ky.) 340; Acme Food Co. v. Older, 61 S. E. (W. Va.) 235, 17 L. R. A., N. S. 807; Mower-Hardwood Creamery & Dairy Supply Co. v. Hill, 113 N. W. (Ia.) 466; Indiana Ry. Co. v. Fowler, 103 Ills. App. 565, 66 N. E. 394; Monnett v. Columbus Ry. Co., 26 Ohio Cir. Ct. R. 469; Stamps v. Bracy, 2 Miss. 312; New v. Wambach, 42 Ind. 456; Cole Bros. v. Williams, 12 Neb. 440; Bank v. Deal, 55 Mich. 592; Anderson v. Walter, 34 Mich. 114; Brooks v. Mathews, 78 Ga. 739; Albany Savings Institution v. Burdick, 87 N. Y. 40.]

There is always a desire in the courts to repress fraud, and also on the other hand, to discourage negli-

gence. In this case, both elements appear. If the defendant's testimony is true, the agents of the plaintiff's assignor wilfully perpetrated a fraud upon him. The evidence of the defendant also shows that he was guilty of negligence in not reading his contract. And if we should find that Linden negligently read the contract to defendant, then defendant would be compelled to stand by his contract, because of his own negligence. But on the other hand, if Linden wilfully and fraudulently misread the contract, then defendant's negligence does not offset the willful act of Linden. [Wells v. Adams, supra.] And we believe that justice will be best administered by punishing the guilty instead of the negligent in a case where both elements appear, and when to do otherwise would be to reward the evil doer and punish the lesser evil of the two.

The respondent claims that the testimony does not show that the books were not of the value named in the contract. This is immaterial except on the question of motive. The defendant had the right to select an English Edition of Disraeli, and was not compelled to accept an American reprint unless he was required to do so by his contract. It is claimed that he was to have the English Edition, and that Linden actually read the contract as calling for such an edition. When the work arrived, the defendant made payments on it before he became suspicions that the books were an American reprint. The matter was taken up with the St. Dunstan's Society and plaintiff, and it was the claim of each that the books furnished were the English Edition. It is not the claim of plaintiff or his assignor that defendant purchased an American reprint, but on the contrary, it is their position that the books are really the genuine English Edition. On the other hand, the defendant claims that St. Dunstan's Society was a myth, and that the books were really printed and bound in Akron, Ohio, and shipped to plaintiff at Kansas City, and there distributed.

The claim of defendant is not entirely without evidence to support it. All of the correspondence purporting to come from the St. Dunstan's Society really came from the building in Kansas City in which plaintiff had his office, and was signed either by plaintiff or someone in his office. The deposition of Mr. Wagner who claimed to be the president and treasurer of St. Dunstan's Society, was offered in evidence. He did not testify that it was a corporation, or that it had any place of business in New York. On the contrary, he testified that while he was the president and treasurer of the Society, he lived in Akron, Ohio, the very place where defendant claims the books were reprinted, and where plaintiff admits they may have been rebound. He did not testify that the books were not printed in Akron, Ohio, although this was a material issue in the case.

As we have stated in another part of this opinion, more than a year after plaintiff claims he had purchased this contract from St. Dunstan's Society, that alleged institution was writing letters to defendant, claiming to be the owner of the contract, and asking him to remit, and these letters were really signed by the plaintiff as the representative of the St. Dunstan's Society. It is strange, indeed, if the St. Dunstan's Society was really a New York corporation and had in good faith sold its contract to plaintiff, that plaintiff should be writing long afterwards to defendant in the name of St. Dunstan's Society demanding payment for the books. We are of the opinion that whether the St. Dunstan's Society ever assigned the contract to plaintiff, and also as to whether the contract was procured from defendant through the fraudulent act of Linden in misreading it, as well as whether the defendant was guilty of negligence in not looking after his own interests were all questions for the jury to be submitted under proper instructions, and that the court erred in refusing to permit defendant to testify, notwithstanding the death of Linden.

The respondent asks us to affirm the judgment, because of the act and conduct of the defendant in keeping from his counsel the bill of exceptions and record in the case. The defendant has not looked after his appeal with the diligence required by law. At the last term of this court, a motion was filed to dismiss the appeal, because of his failure to file his abstract of the record and brief within the time required by the rules of this court. A showing was made to the effect that the defendant was prosecuting attorney of Jasper county, and was busily engaged in the performance of his official duties, and that he relied on counsel to perfect the appeal. It was with much hesitation that we concluded to hear the cause on the merits. It is now shown by the affidavit of the respondent's attorney, that the defendant took the bill of exceptions from the office of the clerk, and kept it until it was too late for respondent to examine it before filing his brief, and on account thereof, respondent does not know whether the printed abstract is correct or not.

The appellant claims he took the bill of exceptions to the printer to have the record printed, and was unable to get the same from the printer's office. The practice of taking records and bills of exceptions from the clerk's office to a printing office, there to be taken apart and scattered about, is subject to criticism, and the attorneys so taking records must be held responsible therefor.

While we do not feel like dismissing the appeal, yet if it should be shown on a motion for rehearing that the printed abstract of the record furnished by appellant, is not correct, and that the facts as found herein are not justified by the whole record, we may then conclude to dismiss the appeal.

The judgment will be reversed and the cause remanded. All concur.