## S. D. ELY, Respondent, v. G. V. SUTTON et al. Appellants.

### St. Louis Court of Appeals, November 4, 1913.

1. **CONTRACTS: Written Instruments: Contradiction by Parol Evidence: Fraud and Deceit.** Where a party is *sui juris*, is in possession of his faculties, and is able to and has full opportunity to read the instrument which he signs, and he executes it without fraud practiced upon him, the law presumes that he knew its contents, and he will not be permitted to take advantage of his own fault or neglience and be heard to say that it does not express the real contract.

2. ——: ——: ——: ——. Where a party is ignorant and unable to read, or but slightly versed in the language in which the instrument is couched, or is intoxicated or otherwise not in possession of his faculties, and he is overreached and his signature to the instrument fraudulently obtained, or where the signature is procured by some trick or artifice, such as switching papers, or the like, or the instrument is fraudently procured without the intention of the signer to deliver the same, such fraud may be shown as a defense.

3. ——: ——: ——: ——. Where defendants were given an opportunity to read a note and chattel mortgage before signing, and no misrepresentations concerning the contents of the instruments were practiced upon them, but they signed the instruments without reading them, they cannot avoid their signatures on the ground of fraud, merely because the attorney of plaintiff, who prepared the instruments, did not embody in them the true agreement.

4. **REPLEVIN: Sale of Property by Plaintiff: Conversion.** A mortgagee who replevies the mortgaged chattels has no legal right to sell them during the pendency of the suit, and such a sale constitutes a conversion, for, as to the parties to the suit,

or their grantees or privies, the chattels replevied are *in custodia legis* pending the determination of the suit.

5. ———: ———: ———: **Counterclaim.** Although the plaintiff in a replevin suit was guilty of conversion in selling the chattels replevied during the pendency of the suit, the defendant had no right to have the damages sustained by him by reason thereof assessed in the replevin suit, as on a counterclaim, since this claim was not in existence at the time the replevin suit was instituted.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett,* Judge.

AFFIRMED.

*A. C. Whitson* for appellants.

(1) The making of payment on a note under an agreement that the balance shall be extended until convenient for the debtor to pay it extends the time of such payment to a period as under the circumstances shall be reasonable. Newell v. Finch, 25 Barb. 175. As between the parties an extension of time is valid if there is any consideration at all and some authorities require no consideration. Brown v. Cary, 74 App. Div. 466; 2 Kent Com. (2 Ed.), 466; 7 Cyc, 900, sub.-sec. II; Byrne v. Carson, 70 App. Div. 130; Cox v. Bennett, 13 N. J. E, 165; Clark v. Dales, 20 Barb. 64. And a violation of such agreement if coupled with any other advantage gained by the promisor is a fraud on the obligor. (2) It is well settled that the time of payment of a bill or note may be extended by oral agreement, as this does not in any way violate the rule against the admission of evidence to contradict a written contract; and such agreement is binding whether consideration is executed as by payment of interest in advance or the mere promise to pay. 7 Cyc 898 b. A chattel mortgage given to secure the indebtedness is a sufficient consideration for extension of time. Kane v. Cortesy, 100 N. Y., 132; Avery Co.

v. Geathers, 130 Mo. App. 202. The extension by a mortgagee of the time of performance suspends his right to foreclose until the expiration of the time; and such extension may be by parole. 20 Ency of Law, 1015. (3) Fraud is conclusively shown in this action, as the giving of time on the debt was the consideration for the mortgage. The mortgage being executed in blank and the parties not having their attention called to the time in the note and mortgage, the same does not represent the contract in fact entered into. If it does there was no consideration for the mortgage. Further, the old note was not delivered to the defendants and they did not know they were executing a new one; and the old note being outstanding there is no consideration for the new, unless it be the extension of time. Joyce Defenses to Com. Paper, Sec. 222; Perry v. Connell, 31 S. W. 685. In order to make the note and mortgage valid the contention of the defendants that they were to have a year's time must be sustained, and there being no default in payment the judgement should have been for the defendant. (4) Any defense, except a counterclaim is good in replevin action arising in justice's court without pleading. Gurley v. Burch, 130 Mo. App. 665, 108 S. W. 1109. The defense that the note was fraudently procured, that it does not represent the agreement of the parties is good and the cause should have gone to the jury. (5) A written contract obtained which is different from the one agreed to, if obtained by fraud or mistake must be set aside. Bank v. Bush, 136 S. W. 29; Henricks v. Vivion, 118 Mo, App. 417; Crim v. Crim, 162 Mo. 544; Carroll v. Peak, 136 S. W. 961; National Bank v. Wells, 98 Mo. App. 573; Wright v. McPike, 70 Mo. 175; McGee v. Bell, 170 Mo. 121. Hence, plaintiff, whether the mortgage was not dated correctly because he failed to apprise scrivener Barrow or whether by fraudulently filling in the blank he must stand to it as agreed to by the parties. (6)

Plaintiff had no right to sell the goods replevined before this suit was determined and having done so has converted them to his own use. Mohr v. Langham, 162 Mo. 474; Storage Co. v. Glassner, 169 Mo. 38. The plaintiff had no right to purchase the goods at his own sale and having done so the mortgage was discharged pro tanto. Boone on Mort. Sec. 276; Williams v. Hatch, 38 Ala. 338; Massey v. Harding, 81 Ill. 330; Priddy v. Bank, 132 App. 279. And having done so this made the issue in this case as to what extent the mortgage debt was discharged; and the value of the property should have been assessed by the jury. (7) In actions of this kind defendant is entitled to have all the issues settled and the issues stated in point six were properly in the case and all rights of the parties should have been adjusted. Turner v. Brown, 82 Mo. App. 34; Gregory v. Tavener, 38 Mo. App. 627; Dillingworth v. McKelvey, 30 Mo. 149; Bowtelle v. Ware, 62 Mo. 350; Dixon v. Atkinson, 86 Mo. App. 28; Calwell v. Ryan, 210 Mo. 17.

*J. O. Barrow* and *Fry & Rogers* for respondent.

(1) The note·secured by chattel mortgage became due April 10, 1910. After that date respondent made frequent demands for payment. On Aug. 24, 1910, he made a demand in writing upon appellants to turn over to him the mortgaged property. This was refused and suit was brought Aug. 26. At that time the condition of payment in the chattel mortgage was broken and plaintiff was entitled to the possession of the property. State v. Adams, 76 Mo. 312; Robinson v. Campbell, 8 Mo. 364; Bowers v. Jones, 67 Mo. 26; Edmonston v. Jones, 96 Mo. App. 91; Mertens v. Kielmann, 79 Mo. 417. (2) The evidence of appellants show conclusively that the alleged contract or agreement, made with Ely for an extension of time, was without consideration. That be-

ing true the agreement, even if made, was not binding and appellants acquired no rights by reason thereof. Woltz v. Parker, 134 Mo. 465; Petty v. Douglass, 76 Mo. 70. (3) An extension of time for the payment of a debt does not postpone the mortgagee's right to the possession of the mortgaged property for failure to pay at the time originally agreed upon. Connersville v. Lowery, 104 Mo. App. 186; Bowers v. Benson, 57 Mo. 26. (4) Appellants admit they executed the note dated April 9, 1910, for $419.50. A promissory note cannot be varied by extraneous agreements. Commission Co. v. Thero, 154 Mo. App. 515; Third Nat'l Bank v. Reichert, 101 Mo. App. 253. (5) Courts do not make contracts for people. They must make their own contracts and if by negligence and indifference to his own interest one permits himself to be overreached, the law affords him no redress, because his own conduct is blameworthy. If he can read he must read before he executes a contract. Carroll v. U. R. Co., 157 Mo. App. 270; Breeders v. Wright, 134 Mo. App. 720. (6) A written contract is conclusively presumed to merge all prior negotiations and to express the final agreement of the parties. When, without fraud practiced upon him, a person signs a contract, he is conclusively presumed to know its contents and to accept the terms thereof. Anderson v. Drug Co., 149 Mo. App. 554; Crim v. Crim, 162 Mo. 552; Johnson v. Life Ins. Co., 93 Mo. App. 588; Och v. Railroad, 130 Mo. 42; Kellerman v. Railroad, 136 Mo. 188.

ALLEN, J.—This is an action in replevin by the mortgagee in a chattel mortgage, to recover the possession of certain personal property as for a default of the mortgagors in the payment of the debt thereby secured. The suit originated before a justice of the peace, where, upon trial before a jury, the issues were found in favor of defendants. Thereupon the plain-

tiff prosecuted an appeal to the circuit court, where the cause was tried *de novo* before the court and a jury. At the close of all the evidence in the case, the court directed a verdict for the plaintiff. In accordance with the court's peremptory instruction a verdict was so returned, and judgment was entered accordingly, from which the defendants have prosecuted their appeal to this court.

It appears that, in the year 1909, perhaps in September of that year, the plaintiff loaned the defendants the sum of $400, taking their unsecured promissory note therefor. It does not clearly appear when this note matured, but the evidence discloses that some time prior to April 9, 1910, the plaintiff requested the defendants to give security for the payment of their debt. The defendants were engaged in the moving picture business in Vandalia, Missouri, and it seems that the money borrowed from the plaintiff was invested in property for conducting and carrying on such business. Upon demand for security for the debt, it was arranged that defendants would give a chattel mortgage upon the property which they owned and were utilizing in the conduct of this business. On April 9, 1910, a note for $419.50 was executed by the defendants, payable one day after the date thereof, and a chattel mortgage of even date therewith was executed by them, covering the property above referred to, and securing said note.

It seems that the transaction had with respect to the execution of the new note and the mortgage was between plaintiff and his attorney on the one hand, and defendant, G. V. Sutton, on the other. The latter testified that the arrangement that he had with the plaintiff was that a mortgage would be executed securing the debt, and that the time of payment of the latter would be extended one year. He testified that nothing was said about taking a new note and that he did not know that he had signed a new note; that he

went to the office of plaintiff's attorney and read to the latter a list of the chattels to be mortgaged, and that the attorney copied the list into the mortgage, and thereupon he signed the papers and that his brother did likewise, without either of them inspecting the instruments, though they were able to read; that they signed the papers without reading them, relying upon plaintiff's attorney to prepare them in accordance with the agreement and understanding in the premises.

As a matter of fact the mortgaged note, instead of being payable one year after date, is a note due one day after date; and in August, 1910, plaintiff instituted this action in replevin, under the mortgage.

1.  Learned counsel for appellant insist that the trial court erred in peremptorily directing a verdict for plaintiff. As to the propriety of the court's action in giving the peremptory instruction, under the evidence, we need only to notice the defense sought to be interposed, that the execution of the note, payable one day after date, was procured by fraud. And the question before us in this regard is whether there was sufficient evidence of fraud in the transaction to make this question one for the consideration of the jury. It is obvious that the other points raised, concerning the dealings between the plaintiff and the defendants, are without merit, in the case presented by this record.

We are to consider whether the testimony adduced on behalf of defendants constituted any evidence of such fraud as the law will recognize as affecting the execution of a written instrument. The gist of the testimony in this regard is to the effect that it was agreed between plaintiff and defendants that the latter would give security for their debt and that the former would extend the payment thereof one year; that defendants supposed that the papers which they signed carried out this alleged agreement,

and that they did not intend to execute a note payable one day after date, but did so relying upon plaintiff's attorney to prepare the papers in accordance with the alleged agreement, and did not read what they signed.

Under what circumstances a party will be permitted to contradict the terms of the written instrument which he has signed, and be allowed to show that the contract which it contains was not the real contract between the parties, and that his signature to the writing was procured through fraud, is a question concerning which much may be written and as to which the authorities are not entirely harmonious. The general rule, however, is well established that, where a party is *sui juris,* in possession of his faculties, is able to and has full opportunity to read the instrument which he signs, and executes it without fraud practiced upon him, the law presumes that he knew its contents, and he will not be permitted to take advantage of his own fault or negligence and be heard to say that the instrument did not express the real contract. [See Crim v. Crim, 162 Mo. l. c. 552, 63 S. W. 489, overruling Wright v. McPike, 70 Mo. 175; Birdsall v. Coon, 157 Mo. App. 439, 139 S. W. 243; Zellar v. Ranson, 140 Mo. App. 221, 123 S. W. 1016; Breeders Co., v. Wright, 34 Mo. App. 717; Paris Mfg. Etc., Co., v. Carle, 116 Mo. App. 581, 92 S. W. 748; Catterlin v. Lusk, 98 Mo. App. 182, 71 S. W. 1109; Magee v. Verity, 97 Mo. App. 486, 71 S. W. 472; Johnston v. Life Ins. Co., 93 Mo. App. 580]. For, as was said in Crim v. Chim, supra, "the written contract is conclusively presumed to merge all prior negotiations and to express the final agreement of the parties. To permit a party when sued upon a written contract, to admit he signed it, but to deny that it expressed the agreement he made or to allow him to admit he signed it, but did not read it or know its stipulations, would absolutely destroy the value of all contracts or negotiable instruments."

As to what will constitute fraud practiced upon the party to procure his signature to a written instrument, the cases are not fully in accord. In Tait v. Locke, 130 Mo. App. 273, 109 S. W. 105, this court, in a well considered opinion by GOODE, J., held that where the plaintiff's agent pretended to read to defendant the written contract, but fraudulently misread the same, thereby inducing the defendant to sign it under the belief that it correctly expressed the agreement between the parties, such false reading of the paper was a fraud upon defendant which might be set up in defense even though the latter could have read the paper himself. There the court said: "Such a betrayal of confidence is revolting, and so infrequent that it is not likely to be anticipated. It perhaps may be distinguished from a mere misrepresentation of the contents of a paper, because a statement of the contents is apt to be condensed so as to misinterpret the meaning of the original or be misunderstood by the hearer." [See also Carroll v. Peak, 156 Mo. App. l. c. 451, 452, 136 S. W. 961; Birdsall v. Coon, supra].

And where a party is ignorant, and unable to read, or but slightly versed in the language in which the instrument is couched, or is intoxicated or otherwise not in the possession of his faculties, and he is overreached and his signature fraudulently obtained to the instrument, there is no doubt that such fraud may be shown in defense. [See Bank v. Brisch, 154 Mo. App. 631, 136 S. W. 29; Hendricks v. Vivion, 118 Mo. App. 417, 94 S. W. 318.] And it cannot be doubted that where the signature of one is procured to an instrument by some trick or artifice, such as the switching of papers and the like, or the instrument was fraudulently procured without the intention of the signer to deliver the same, he may set up the fraud.

In cases of this character, as observed by Judge GOODE, in Tait v. Locke, supra, "the point of difficulty is as to how far the law ought to go in prescribing

what acts of imprudence on the part of the signer shall exclude the defense of fraud—exclude it, not out of deference to the knave, but because of the impolicy of permitting contractual writings to be impeached except on the most flagrant grounds; like forgery, duress or the incapacity of the signer . . . . Considered in its practical aspect, the question might be put in this form: 'When will the law deem it important to make the negligence of the signer the decisive fact, rather than the fraud of the promisee?' "

We are not, of course, assuming that there was any fraud here practised, but we are concerned purely with the question as to whether there was any evidence to take this attempted defense to the jury. And the question arises between the immediate parties to the instrument and is so considered.

In Johnston v. Insurance Co., supra, the majority of the court held that the plaintiff there was bound by the terms of a written contract, which he had signed without reading, in reliance upon the statements and representations of the plaintiff's agent as to what the instrument contained. In other words, it was there held that a false statement of the contents or effect of a written instrument (not a misreading of it) was not such a fraud as may be set up in defense to nullify the instrument. [See, also, Magee v. Verity, *supra.*] As to this, however, there is much conflict of authority. [See 1 Page on Contracts, sec. 64 and authorities cited.]

But, in the case before us, it seems that the evidence does not even go so far as to show that plaintiff's attorney, with whom the defendant G. V. Sutton dealt, made any representations concerning the contents or legal effect of the note or mortgage. So far as the testimony goes it merely tends to show that the papers prepared and executed did not represent the actual agreement between the parties, and that defendants signed them supposing that they had been

drawn in conformity with what they say was the true agreement. This cannot be said to constitute a misrepresentation as to the character of the instruments, and under the authorities was not sufficient to constitute a defense of fraud or mistake in procuring defendants' signatures; and though defendants' testimony in this regard be true, it is insufficient to permit them to overcome the binding force and effect of the written instruments which they signed.

II. It appears from the record that during the pendency of the suit, and before the same was heard in the circuit court, plaintiff caused the property which had been seized under the writ of replevin to be sold, and that he at the sale bought in nearly all of it himself at what is said to be but a nominal price therefor. The point is made that the plaintiff had no lawful right to sell the same during the pendency of the suit, and that, when it was made to appear at the trial below that this had been done, the mortgage debt was at least *pro tanto* discharged, and that the value of the property should have been assessed by the jury.

It is true that plaintiff had no legal right to sell the property during the pendency of the suit; for, as to parties to a replevin suit, or their grantees or privies, the property is *in custodio legis* pending the determination of the suit, and cannot lawfully be sold by the party in possession. And such sale constitutes a conversion of the property. [See Mohr v. Langan, 162 Mo. 474, 63 S. W. 409; Western Storage & Warehouse Co., v. Glasner, 169 Mo. 38, 68 S. W. 917.]

This action, however, is one in replevin for the possession of the property in question and for damages for the detention thereof. Plaintiff recovered judgment for the possession thereof and one cent damages for its detention. The matter of which defendants complain respecting the sale of the goods is not an issue in this case. This court has held that a counter claim may, in a proper case, be maintained in a re-

plevin suit (McCormick Harvesting Co., v. Hill, 104 Mo. App. 544, 79 S. W. 745); but not only was no counterclaim here filed, but none could have been filed, for the reason that any claim which defendants may have growing out of the sale of the property by plaintiff was not in existence at the time of the institution of this action. Whatever right the defendants may have to set up such claim in defense of an action on the note for a deficiency judgment, or to proceed against plaintiff in an independent action as for conversion of the chattels, is a matter which is not before us and which we need not decide.

A careful examination of the entire record convinces us that the trial court did not err in giving the peremptory instruction, and that the judgment herein must be affirmed. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.