## JOSEPH O'SHEA, Appellant, v. WILLIAM F. LEHR, Respondent.

### St. Louis Court of Appeals, April 7, 1914.

1. **CONTRACTS: Written Instruments: Contradiction by Parol Evidence.** Unless fraud is practiced upon him, a person who signs a contract is conclusively presumed to know its contents and to assent to the terms it reveals on its face, and the mere fact that he omits to read it before affixing his signature does not alter the rule.

2. ———: ———: ———. While it is true that a person who is induced to sign a contract through fraud—e. g., as where it is misread to him, and he signs it, believing it to be something other than it really is—may be afforded relief, either at law or in equity, yet where he is able to read and understand and is familiar with business transactions, he will not be relieved of the obligation imposed by the contract, on the ground of fraud, where nothing more appears than that the party presenting it represented it to be something other than it really was.

3. **EVIDENCE: Best Evidence.** Where the question of whether the liability of the maker of a promissory note had been adjudicated in a former action was in issue, parol evidence to prove such fact was not competent, since the record in the former case was the best evidence.

4. **RES ADJUDICATA: Matters Concluded: Facts Stated.** Plaintiff sued defendant on an alleged loan of $2000. Defendant's theory was, that the $2000 received by him was not a loan, but was a payment on a note for $5000, executed to him by plaintiff. After the $2000 had been paid to defendant, he assigned the note to a third party, who set up the balance due on it, by way of counterclaim, in an action brought against

O'Shea v. Lehr.

him by plaintiff. Plaintiff set up, as a defense to the counter-claim, that the note was procured by fraud, and he prevailed on that issue. The note was subsequently reassigned by the third party to defendant. *Held*, that plaintiff could have paid $2000 on the note, even though it was obtained from him through fraud, if he saw fit to do so, and as that payment was made, if at all, prior to the suit in which the note was set up by way of counterclaim, only the amount appearing to be due on the note after deducting such alleged payment was adjudicated in that action, and hence the question of whether $2000 had been paid on the note was not *res adjudicata*.

5. **EVIDENCE: Burden of Proof: Party Asserting Affirmative.** In an action on an express contract to repay money loaned, where defendant conceded that he received the amount sued for from plaintiff, but stated that it was a payment on a note executed to him by plaintiff, the burden of proof was on plaintiff.

6. ————: ————: ————. Although the burden of the evidence may shift from side to side, accordingly as the evidence given by the party appears to establish or rebut a prima-facie showing, the burden of proof remains throughout on the party asserting the affirmative of the proposition to be sustained.

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey*, Judge.

AFFIRMED.

*Chas. J. Macauley* and *Harry H. Haeussler* for appellant.

(1) It may be shown by parole evidence that a paper, although in the form of a note, was signed and given as a mere receipt; or to show that the party when signing the paper believed that it was something different from what it really was, or that there was no consideration for it; or that it was obtained by fraud or trick. 1 Daniel on Negotiable Instruments, page 118; Stoyell v. Stoyell, 82 Me. 334; Insurance Co. v. Owens, 81 Mo. App. 201; Broyles v. Absher, 107 Mo. App. 169; Wright v. McPike, 70 Mo. 178; Brown v. North, 21 Mo. 528; Lithographing Co. v. Obert, 54 Mo. App. 240; Mann v. Hall, 127 Mo. App. 713; Bank v.

Hanks, 142 Mo. App. 110; Hill v. Dillon, 151 Mo. App. 86; Bank v. Huttle, 144 Mo. App. 294; Hardwood v. Brown, 23 Mo. App. 69; Bank v. Bresch, 154 Mo. App. 631. (2) And the question of whether or not the paper purporting to be a note was given as a note or a receipt is, where the evidence is conflicting, a question of fact for the jury. Bush v. Brandecker, 123 Mo. App. 470; Grady v. Insurance Co., 60 Mo. 116; Book Co. v. Yount, 129 Mo. App. 254. (3) An instruction that assumes the existence of a fact in dispute is an erroneous instruction and should not be given. Orscheln v. Scott, 79 Mo. App. 540; York v. City of Everton, 121 Mo. App. 640; Klem v. Transit Co., 117 Mo. App. 691; Browning v. Railroad, 118 Mo. App. 449; Stone v. Rayar, 200 Mo. 444; Stone v. Hunt, 94 Mo. 475; Shoe Co. v. Helig, 70 Mo. App. 310.

*Schnurmacher & Rassieur* for respondent.

(1) There was, under the pleadings, only one issue to be submitted to the jury, and that was, whether plaintiff did or did not let defendant have money as a loan. Plaintiff's instructions upon matters outside the issue were therefore properly refused. (2) There being an abundance of evidence in the record to the effect that plaintiff did not give defendant any money as a loan, the verdict of the jury is conclusive. (3) The burden of proof did not shift. (a) Because under the pleadings the burden is with the plaintiff; plaintiff alleged a loan and the defendant filed a general denial. Berger v. Storage Co., 136 Mo. App. 36; Dorrell v. Sparks, 142 Mo. App. 460. (b) There was no admission on the part of defendant that he had ever had any money from plaintiff as a loan; (c) No presumption arises from the mere receipt of the money by defendant that he received it as a loan; on the contrary, the following presumptions must be indulged in: (a) that the $5000 note sets forth the true agreement of the parties;

(b) that the plaintiff, as maker, read the note when he signed it; (c) that the note (being in the payee's possession on May 22, 1909), was unpaid, except to the extent of the credit then endorsed thereon; (d) that the $2000 was given to defendant as a payment on the note, not as a loan. Defendant does not claim that these presumptions cannot be overcome, but the burden to overcome them rested with the plaintiff; the burden did not shift.

STATEMENT.—This is a suit for $2000 alleged to have been loaned by plaintiff to defendant. Defendant denies that he borrowed the amount, but says plaintiff paid it to him on a note of $5000. The finding and judgment were for defendant and plaintiff prosecutes the appeal.

Plaintiff says he and defendant were partners in the matter of wrecking some buildings and the sale of the materials therefrom thus acquired, and during the time, on May 22, 1910, he loaned to defendant $2000. Defendant denies that he was interested as a partner with plaintiff in the matter of wrecking buildings, but says he advanced a certified check of $5000 to plaintiff to be deposited with the city authorities as an earnest of good faith when the contract was let to plaintiff, and for this sum plaintiff executed to him the $5000 note referred to. Touching this matter, plaintiff insists that he did not understandingly execute a note to defendant but signed a writing, which is in form a promissory note, at defendant's request, believing it to be a mere receipt for the $5000 draft, as it was so denominated by defendant at the time.

Plaitniff's counsel, in his brief, has stated the facts pertaining to the controversy and out of which it arises most favorably to his client, and we reproduce that statement here as revealing a general outline of the evidence.

"On September 2, 1908, John P. Boyce, commis-sioner of supplies for the city of St. Louis, began advertising for sale all of the certain condemned build-ings located on city blocks 208 east and 208 west of said city, being the city blocks on which the new mu-nicipal court buildings now stand. It was stated in the advertisement that 'the successful bidder will take down all structures to the ground line and remove all the material on the aforesaid premises, leaving cellars, cisterns, wells, vaults or other excavations free from debris of any and all kinds on or before December 15, 1908.' The bidder, by the terms of said advertisement, was required to present with his bid a certified check for $5000 on some bank or trust company of said city, payable to the order of the city treasurer, as a guar-antee that all the requirements of the contract would be fulfilled. All bids were to be presented to said com-missioner on or before September 14, 1908, the day on which said bids were to be opened.

"On September 11, 1908, plaintiff, in response to a postal card which he received from the Kellermann Contracting Company asking him to call and figure on some work, called at the office of that company in the Roe building, Fifth and Pine streets. When he called at said office he met defendant, who was the secretary and treasurer of said company. Among other ques-tions which defendant asked appellant at that time was the question of whether or not plaintiff knew of said buildings that were going to be wrecked, and which were situated on the blocks of ground on which said court buildings were to be erected. And defendant also asked plaintiff if he was going to figure on that job. Plaintiff shrugged his shoulders and shook his head and told respondent that he thought it was too big a job for him, appellant, to handle. This was on the 11th day of September, 1908, only two days before the day on which the bids for said work had to be pre-sented. Defendant then told plaintiff to go to the sup-

ply commissioner's office and see what he could do.
Plaintiff in response to this request of defendant said:
'All right, I will run right up there and see what the
conditions are and figure the job.' Appellant did go
to the office of said supply commissioner and met there
a Mr. Bakersmith, in charge of said office, and asked
him what the conditions were in regard to said work,
and was told that it required a $5000 certified
check, and Mr. Bakersmith then told appellant
that the $5000 certified check that was required
to be presented with the bid would be applied
toward the payment of the buildings in case
they were the successful bidders. Plaintiff then re-
turned to defendant's office and told defendant what
Mr. Bakersmith had told him. Respondent then told
plaintiff to come to his office the next day, which was
Saturday, and to come down early, 9 o'clock,
as respondent was going away, and he would
see appellant. Plaintiff did call at defendant's
office the next morning about 9 o'clock, remained
there about two minutes, and then defendant came out
of his private office and said to plaintiff: 'Come
ahead.' Plaintiff and defendant then went down to
the street and when they got to Broadway defendant
said to plaintiff: 'If you want to assume a partner-
ship in the wrecking of these buildings up here I don't
want you to tell anybody I have any connection with
this, because my company might not like to go into
anything outside of its own business.' And plaintiff
replied: 'That will be satisfactory to me; anything
you say to me I will keep quiet.' They then walked up
to the German-American Bank, located at the corner
of Fourth street and Franklin avenue, defendant went
into the bank, and plaintiff remained outside. When
defendant came out he told plaintiff he got a certified
check for $5000. They then walked back to defendant's
office, at which place defendant asked plaintiff if he had
a suit case and when plaintiff told him he had, he

asked to borrow it. Appellant told him all right that he would get the suit case. Plaintiff then went out to his home, got the suit case, returned with it to defendant's office about 2 o'clock. He went into defendant's private office and defendant said to him: 'Joe, I want you to sign a receipt now. I am in a hurry to get away; it is just a receipt to show, in case anything happens to me on my trip we will know what become of this $5000 certified check.' Plaintiff signed the paper which he supposed was a receipt and went on about his business. In the hurry he never noticed the paper which he signed, supposed it was a receipt, what defendant told him it was. And he did not learn that this paper he signed, and which he supposed to be a receipt, was in the form of a $5000 promissory note, until after he had instructed his counsel to bring suit against the Kellermann Contracting Company to recover some money which that company owed him for some excavating work done for what was known as the Dickson street job.

"On Monday morning, September 14, 1908, plaintiff called at defendant's office, which was in the office of the Kellermann Contracting Company, and there met one Wishmeyer, who was in the employ of said company; and Wishmeyer then handed plaintiff an envelop in which was said certified check for $5000 and two bids, which were written up by Wishmeyer; and in one of these bids, he Wishmeyer, had inserted the figures $4100, and in the other he left the place for the amount to be bid, blank, and told plaintiff if he found he could get the buildings at $4100 to use the $4100 bid, and if not then fill out the $4900 bid, that is, insert the figures $4900 in the proposal. Plaintiff went to the office of the Supply Commissioner with said check and said bids, and then inserted the figures $4900 in the bid in which the amount was left blank, handed that and said check to Mr. Bakersmith, who was then in the Supply Commissioner's office. Plaintiff then returned

to the office of said contracting company, and reported
to Wishmeyer what he had done. The next day he was
notified that the contract was awarded to him.

"It appears from the testimony that said Supply
Commissioner would not apply the said $5000 certified
check in payment for said buildings, but required that
plaintiff put up $4900 to pay for the buildings; and
also give a bond. Plaintiff reported to Wishmeyer, the
person whom defendant had told plaintiff would look
after the matter, what said Supply Commissioner re-
quired and he told Wishmeyer that he had better try
and get in communication with defendant who was then
in Colorado. Wishmyer promised plaintiff that he
would try and locate defendant; that he, Wishmeyer,
had already made arrangements with a Mr. Janis about
a bond and for plaintiff to go and see him. Plaintiff did
call on Mr. Janis, who asked plaintiff who was in the
contract with him, and plaintiff first declined to tell
him, saying that he promised not to reveal the name
of the person who was in the contract with him, but
finally told Janis that it was respondent Lehr. Then
the question of getting the $4900 to pay for the building
came up, and Mr. Janis asked plaintiff where he did
his banking business and plaintiff told him at the Mer-
chants-Laclede National Bank. Plaintiff and Mr. Janis
then went to said bank and plaintiff was told by the
cashier there that that bank would cash a note if plain-
tiff got an endorser on the note. Plaintiff then went to
the office of said Kellermann Contracting Company,
and asked Wishmeyer who was there, if he would ask
Mr. Kellermann, president of that company, if he would
endorse a note for $4900. Plaintiff afterwards went
into the office of Mr. Kellermann and he endorsed the
note, and plaintiff then went to the Merchants-Laclede
National Bank, and that bank gave him $4900 for the
note. Plaintiff then got a certified check for that
amount, which he took to the office of said Supply
Commissioner. The bond having been filed the work

of wrecking said buldings which plaintiff and defendant purchased from said city was begun about the 25th day of September, 1908. Plaintiff and defendant were partners in that work or undertaking.

"Defendant returned from his trip to Colorado about two weeks after the time he left St. Louis, which was September 12, 1908. And when he returned plaintiff told him what he had done in the matter; that instead of the Supply Commissioner using the $5000 certified check which was deposited with the bid, to pay for said buildings, as Mr. Bakersmith promised him they would do, they held it and required plaintiff to not only furnish a bond but also required him to put up $4900 to pay for the buildings, and that to obtain this $4900 he had to get Mr. Kellermann to endorse a $4900 note. This note for $4900 fell due on the 18th of December, 1908, and when it came due plaintiff took $2500, which he had obtained from the sale of materials that were taken from said buildings that were purchased from said city and defendant Lehr, took $2400 of his money which he had to borrow, and they went to the bank where this note was and paid it. For the $2400 which defendant contributed toward the payment of said $4900 note, he took no note from plaintiff. This $2400 was paid back to respondent with money that had been obtained from the sale of material taken from said buildings, in sums as follows: $1000 January 18, 1909, and $1400 about February 17, 1909, and defendant was not paid any interest for the use of that $2400 which he put up to pay said $4900 note.

"From the time defendant returned from Colorado which was about the 1st of October, 1908, until the time they stopped working on those buildings in 1909, he, defendant, would be up about the place where those buildings were being wrecked very often, as much as two and three times a week. And he gave orders to the foremen there, and made suggestions with reference to the work. And defendant told the foreman, Brock-

hausen, that he, Lehr, was interested in the work, and had money invested in the propositions. Defendant had Wishmeyer, who was in the employ of said Lehr and said Kellermann Contracting Company, look after the work of keeping the books in which an account of the work done in doing said wrecking work was kept; he, Wishmeyer, going up to the office on 13th and Market streets where the said books were kept, nearly every night and working there on the books from two and one-half to four hours each night, and he would also go there some times during the day, and would work there all day Sundays, while said wrecking work was progressing. He, Wishmeyer, would make out statements, would keep track of the pay-roll, and at times would take money to the bank. There was also another bookkeeper named Schafer, who worked on the books at the office during the day time. Wishmeyer told the foreman, Brockhausen, that he, Wishmeyer, was there to take care of defendant's, Lehr's, interest.

"On the 22nd day of May, 1909, about 1 o'clock, defendant called at the office at 13th and Market streets to see plaintiff, O'Shea, and while there in the presence of the witness, Hughes, he told plaintiff, that, he, Lehr, had some notes to take up, that he needed money very bad, and asked plaintiff for the loan of $2000. Plaintiff in reply told him that the company, referring to the Kellermann Contracting Company, owed him, plaintiff, $3000, and he would loan him $2000 of this money, providing defendant would pay him back in a few days, as plaintiff needed it. Defendant stated in reply that that was satisfactory to him, and then plaintiff and defendant went down to the office of said contracting company in the Roe building, 5th and Pine streets, and went up to the private office of defendant, and he then, as treasurer of said contracting company wrote out a check payable to plaintiff for $2000, handed it to plaintiff, who wrote his name across the back of it and then returned it to defendant. Then plaintiff signed a re-

ceipt in favor of said contracting company, showing that the plaintiff had received $2000 on account of the $3000 which said company owed him for work done on what was known as the Dickson street job; and then plaintiff left said office. Defendant afterwards had said check cashed. Plaintiff sometime later asked defendant to return to him said $2000 which he loaned him; but defendant did not comply with this request. Plaintiff also requested the Kellermann Contracting Company to pay him, plaintiff, the balance, $1000, which that company yet owed plaintiff on account of the work done on said Dickson street job, and he not receiving it, filed suit on the 22nd day of January, 1910, against said company to recover said sum. In that suit said company filed as a counterclaim said paper, which defendant in this case claims was given him as a $5000 note and which plaintiff claims was signed, given as, and intended for a receipt, claiming that Lehr had assigned said paper to it. All the witnesses who testified in that case testified in this case of O'Shea v. Lehr; and the testimony given in that case was practically the same as that given in this case now before this court. In fact the testimony in this case was much stronger and more in favor of plaintiff, O'Shea, than was the testimony in the case of O'Shea v. Kellermann Contracting Company. The Kellermann case was tried before a jury, and the jury in that case returned a verdict in favor of plaintiff, O'Shea, and against said Kellermann Contracting Company for $1000, the balance due plaintiff on the said Dickson street job, and also decided in favor of O'Shea on defendant's counterclaim, thereby sustaining plaintiff in his contention that the paper which defendant claims was given as a $5000 note was in fact only a receipt and was given and signed as such by O'Shea. No appeal was taken from that judgment but it was paid by the defendant in this case.

"To plaintiff's petition filed in the case at bar defendant filed a general denial, but at the opening of the case he admitted receiving the $2000, but set up the claim that plaintiff was indebted to him on a $5000 note, and that said sum was given in part payment of that note. This plaintiff denied. The question of whether the paper purporting to be a $5000 note was a note or a receipt was one of the principal questions in the case.

"The case was submitted to the jury and they found a verdict for defendant."

NORTONI, J. (after stating the facts).—The above statement is the most favorable view of the case to plaintiff, for there is an abundance of contradictory evidence in the record introduced on the part of defendant. Defendant insists that he at no time became a partner with plaintiff in the matter of wrecking the buildings, but merely undertook to aid him upon his urgent solicitation to do so. Defendant says that he advanced the $5000 certified check to plaintiff as a loan and took his note therefor, payable on demand, both parties expecting that the check would be withdrawn from deposit with the city authorities in a few days, and returned to defendant. Defendant's bookkeeper, Wishmeyer, says substantially the same about this transaction and testifies that he drew up the note, which plaintiff signed, on the day of its date, September 14, two days after defendant had gone to Colorado. Wishmeyer says, too, and defendant testifies to the same effect, that though he was the bookkeeper of the Kellermann Contracting Company, he kept books for plaintiff as well, under an agreement by which plaintiff was to pay him for such service, and that he in no manner represented defendant while so doing. Defendant explains the matter of advancing $2400 to enable plaintiff to pay the $4900 note on which Kellermann was security, saying that, unless he

did so, he feared plaintiff would abandon the contract with the city and thus forfeit the $5000 certified check which he hoped to enable him to recover so as to compensate the indebtedness plaintiff owed him. Defendant further explains that his frequent presence about the work being conducted by plaintiff was because of his desire to urge it along, so that he might receive payment of the $5000 advanced under circumstances suggesting at the time that it might be returned within a few days, but which subsequently threatened to entail a loss upon him. Touching the $2000 here in suit, it is insisted by defendant that plaintiff paid him that sum to be credited on the $5000 note, and Wishmeyer, the bookkeeper, testifies to the same effect. Defendant and Wishmeyer both say that defendant was constantly after plaintiff endeavoring to collect money from him, and finally he was induced to assign a check for $2000 of the Kellermann Contracting Company to defendant as a payment thereon, and this is the $2000 in controversy. Defendant says he credited the amount on the note, with plaintiff's acquiescence, as he did the $1100 collected from plaintiff about a month before that date. From what has been said, it appears that there is a controversy between the parties as to whether or not plaintiff executed to defendant the $5000 note in suit and whether or not the sum of $2000 sued for was to be credited thereon. Plaintiff testifies that he affixed his signature to the $5000 note, believing it was a receipt, and that he did this at the instance of defendant. Defendant says he left the draft with Wishmeyer and went to Colorado, and that Wishmeyer took the note for him from plaintiff two days thereafter, and the note appears to be dated accordingly—that is, September 14th. Wishmeyer testifies positively that upon delivering the $5000 draft of plaintiff on Monday morning, September 14, he drew up the note and required plaintiff to sign it as defendant had instructed him to do before leaving for Colorado on Saturday.

Wishmeyer says, too, plaintiff understood the trans-
action fully. The testimony of plaintiff is to the effect
that he went to defendant's office on Saturday after-
noon, September 12, when defendant said to him, "Joe,
I want you to sign a receipt now. I am in a hurry
to get away; it is just a receipt to show, in case any-
thing happens to me on my trip, we will know what
become of this $5000 certified check." Plaintiff says,
upon this statement being made by defendant, he
merely signed the note without reading, thinking it
was a receipt and went away; moreover, that it was
several months thereafter before he learned that de-
fendant claimed to have his note and that though he
paid defendant $1100 in April he made this payment
to defendant as his partner as a part of the proceeds
of the wrecking business and not as a payment on the
note.

Plaintiff requested the court to instruct the jury
that if he signed this note under the circumstances
above set forth, believing it was a receipt at the time,
then the finding should be for him with respect to that
matter. The court refused this instruction, and it is
urged such was error, for it is said on the evidence the
question is one of fact as to whether or not plaintiff
had given defendant his note or merely signed a re-
ceipt for the $5000 check. But it is clear enough that
the court did not err in refusing this instruction, for
the evidence is wholly insufficient under the decisions
in this State to render the question concerning it one
for the jury. There is nothing in the record to sug-
gest that plaintiff was unlearned or not amply able
to care for himself in transactions of the character
here involved. Indeed, he appears to be an active bus-
iness man, conducting extensive operations as a con-
tractor and reads and writes as business men usually
do. The rule is, that unless fraud is practiced upon
him, a person who signs a contract is conclusively pre-

sumed to know its contents and to assent to the terms it reveals on its face. The mere fact that he omits to read the contract before affixing his signature thereto in no wise alters the rule.

But it is true that if a party is induced, through fraud and deceit, to sign a promissory note when he believed he was signing a receipt only, relief may be afforded to him either in law or in equity. Where one is induced by another to rely upon his reading the contract to him before signing, and such person misreads it, with a view to deceive, and thus obtains his signature to a document different from that intended, relief may be had on such showing alone. But this proceeds from the fact that such a betrayal of confidence is both so revolting and so infrequent that it is not likely to be anticipated by the average man. [See Tait v. Locke, 130 Mo. App. 273, 282, 109 S. W. 105; Carroll v. Peak, 156 Mo. App. 446, 136 S. W. 961.]

However, cases of that character are not identical with those where nothing more appears than a mere misrepresentation of the contents or character of a paper to which another affixes his signature. In cases of the character last referred to, something more must appear to invalidate the contract than that the party merely signed the note without reading on being told by the party presenting it that it was a receipt. When it appears that the person so signing the note is amply able to read and understand and is familiar with business transactions generally, he may not be relieved of an obligation on the grounds of fraud or misrepresentation, unless something more appears to mislead or trick him than the mere fact the party presenting the note said it was a receipt. Touching such matters Chancellor Kent has well said: "The common law affords to everyone reasonable protection against fraud in dealing; but it does not go to the romantic length of giving indemnity against the consequences of indolence and folly or a careless indifference to the ordi-

nary and accessible means of information.'' [2 Kent's Comm. 485.] Numerous authorities in this State sustain the view that something more is required to render the question of fraud concerning the execution of an instrument one of fact for the jury than the mere signing of it, without reading, by one who is amply able to read and understand, at the request of another, relying on his statement concerning the contents or character of the contract. [See Johnston v. Cov., etc., Ins. Co., 93 Mo. App. 580, 590, 591; Magee v. Verity, 97 Mo. App. 486, 71 S. W. 472; Crim v. Crim, 162 Mo. 544, 552, 553, 554, 63 S. W. 489; Ely v. Sutton, 177 Mo. App. 546, 162 S. W. 755.]

The court did not err in refusing to submit to the jury the matter of the alleged imposition upon plaintiff, in obtaining his signature to the note, when he supposed it was a mere receipt, for the reason the evidence touching this matter is insufficient to create an issue of fact concerning it. In this view it was competent for the court to treat the note as a note at law, executed by plaintiff to defendant, for it admittedly bears his signature and purports on its face to be a promissory note in the usual form.

There is some evidence in the record tending to prove that plaintiff here sued the Kellermann Contracting Company, of which defendant is secretary, for a balance said to be due plaintiff on a contract for improving Dickson street, and that he prevailed in that action. It appears, too, that defendant assigned the $5000 note to the Kellermann Contracting Company some months after the credits of $1100 and $2000 were entered thereon, and subsequently the Kellermann Contracting Company assigned a note back to defendant. It is said, though not proved in the case, that the Kellermann Contracting Company interposed a counterclaim on this $5000 note in plaintiff's suit against it and that the jury found the issue with respect of it in favor of

plaintiff. However, there is nothing said in the pleadings touching this matter whatever. Neither plaintiff's petition nor defendant's answer refers to this note. If the note is *res adjudicata* because of its having been in suit in the Kellermann case; no reference is made to that matter in the pleadings and, indeed, no argument is advanced here concerning that subject. Plaintiff's petition proceeds on the theory that he loaned defendant $2000 which defendant refused to pay after demand. Defendant's answer is a mere general denial, and the note came into the case by way of the evidence without reference to it in the pleadings. Plaintiff sought to prove that the note was declared upon in the counterclaim of the Kellermann Contracting Company in his suit against that concern and the finding and judgment were for him thereon. An objection was interposed by defendant's counsel to the method of proof to the effect that the record in the case of this plaintiff against the Kellermann Contracting Company was the best evidence concerning that matter. This objection the court sustained. It is argued the court erred in this ruling, but we are not so persuaded. If the matter were relevant, the best evidence concerning it, of course, should have been produced, and this was not done. However, it is to be said that the theory pursued by defendant in the instant case goes to the effect that, even though the note was in suit in the Kellermann case, the verdict and judgment therein concluded only that portion which remained due at the time, for it is said the $2000 involved here was paid by plaintiff to defendant on the note several months prior to its assignment by defendant to the Kellermann Contracting Company and several months before the suit against that company in which the note was set up in the counterclaim. Concerning this feature of the case, it is unnecessary to say more than it was competent for plaintiff to pay $2000 on the note, even though it was obtained from him through fraud, if he

O'Shea v. Lehr.

saw fit to do so, and as that payment on the note was made, if at all, prior to his suit against the Kellermann Contracting Company, of course, only the balance appearing to be due on the note thereafter could become the subject of *res adjudicata*, in any view.

The court instructed the jury that the burden of proof rested upon plaintiff, and it is urged this was error. But we are not so persuaded. By his petition plaintiff stated that on the 22nd day of May, 1909, at the request of defendant, he loaned to him the sum of $2000 which sum defendant agreed and promised to pay. The suit appears to proceed on an express contract to repay the money as if it were a loan and because of the breach of the agreement to do so. Obviously, in such circumstances, the burden of proof lies with the plaintiff. [See McKee v. Verdin, 96 Mo. App. 268, 70 S. W. 154.] But it is argued that because defendant concedes in his evidence that he received the $2000 from plaintiff, but says it was paid to him on the note, the burden was thereby shifted to him with respect to this matter. This suggestion is without influence in the case, for plaintiff expressly declares upon a loan to defendant and seeks to recover because of his failure to observe the obligation to repay it. Moreover, though the burden of the evidence may shift from side to side in the case, as that given by the parties appears to establish or rebut a prima-facie showing, the burden of proof remains throughout on the party asserting the affirmative of the proposition to be sustained. [See Berger v. Storage & Commission Co., 136 Mo. App. 36, 42, 116 S. W. 444.]

It would unduly extend the opinion to discuss separately all of the instructions refused but they have all been considered, and we see no reversible error with respect to the rulings thereon. The same is true as to the rulings on the evidence. The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.