KIESELHORST PIANO COMPANY, Appellant, v.
ELIZABETH PORTER, Respondent.

St. Louis Court of Appeals.    Argued and Submitted October
7, 1914.    Opinion Filed November 3, 1914.

1. REPLEVIN: Damages: Rental Value of Property.  A defend-
ant who is deprived of the use of a chattel by a wrongful re-
plevin is entitled to recover the value of the use thereof during
the period of detention.

2. ———: Evidence: Nonentry of Payment on Note.  In an
action to replevy a chattel from defendant for alleged non-
payment of a note for the purchase price secured by a chattel
mortgage, defended on the theory that the note had been fully
paid, *held* that evidence tending to show that payments made
had not been entered on the back of the note until a short
time prior to the trial was admissible.

3. CONTRACTS: Varying Written Contract: Parol Evidence.  In
the absence of fraud, parol evidence is not admissible to over-
turn or contradict a written contract.

4. BILLS AND NOTES: Varying Written Contract: Parol Evi-
dence: Payment.  Where defendant executed a note for $200
for the purchase price of a piano and paid $10 in cash and
delivered a credit slip issued by plaintiff for $75, parol evi-
dence was admissible in an action on the note to show that
$200 was the purchase price, and not $275, as claimed by plain-
tiff, and that plaintiff had failed to give defendant credit for
the $75 credit slip, since such testimony did not tend to impeach
or contradict the note, but merely tended to prove that credit
for a payment made had not been endorsed thereon.

5. INSTRUCTIONS: Failure to Define Terms: Harmless Error.
Where negligence was not the gist of the action, the use of the
word "negligence" in an instruction, without defining it, was
not error.

6. APPELLATE PRACTICE: Review: Issues not Raised at Trial.
Where an issue predicated upon an alleged estoppel was not
raised at the trial, the question of whether or not there was
an estoppel will not be considered, on appeal.

Appeal from St. Louis City Circuit Court.—*Hon.
Hugo Muench,* Judge.

AFFIRMED.

*H. A. Loevy* for appellant.

(1)  The court erred in admitting evidence of rental value of piano from date of caption. That is not a legal element of damage herein, because respondent did not rent another piano for her use *pendente lite*. She was deprived of the use, namely, loss of pleasure of playing on the piano, but that deprivation cannot be measured by money. It is wholly speculative and fanciful. 34 Cyc. 1562-3-4; Gas Co. v. Morton, 111 Mich. 407. (2) The court erred in admitting parol proof to contradict or vary note and mortgage, both of which respondent signed. There was no deception or fraud as to purchase price not being net $200 and that same was not correctly stated in note and mortgage. (3) Respondent's instruction number 1 is erroneous: (a) There is no evidence on which to base it. (b) It leaves the law to the jury, namely, whether respondent was or was not "negligent" at the time she signed the note and mortgage. Raybourn v. Phillips, 160 Mo. App. 541; Casey v. Bridge Co., 114 Mo. App. 65; Kame v. Railroad, 254 Mo. 395; Wiser v. Chesley, 53 Mo. 549; Benjamin v. Railroad, 245 Mo. 614.

*Ellroy V. Selleck* for respondent.

REYNOLDS, P. J.—This action, commenced before a justice of the peace, is a statutory action for claim and delivery of personal property, replevin, so-called, plaintiff claiming under a chattel mortgage executed by defendant, the chattel mortgage pledging a certain piano which had been bought by defendant of plaintiff, secured a note dated November 30, 1908, signed by defendant, whereby for value received she promised to pay to order of defendant $200, "with

six per cent interest per annum to maturity; said principal and interest payable $10 cash this date and balance in installments of five or more dollars each and every month, beginning December 30, 1908,'' with the usual clause that in case of default in the payment of the note or any installment or of interest when due the whole should become due.  Defendant made no written pleading, nor does the abstract show which party prevailed before the justice.  The case reached the circuit court, where it was tried before the court and a jury, resulting in a verdict in favor of defendant, the jury finding that defendant is still the owner and entitled to possession of the property, describing the piano, assessing the value of it at $125, and assessing damages in favor of defendant for the wrongful detention of it in the sum of $31.25, that, as stated in the verdict, being at the rate of $2.50 a month for a year and fifteen days.  The ordinary judgment in such cases, as provided by statute, followed.  Filing a motion for new trial as well as one in arrest, plaintiff has perfected its appeal to this court.

Here counsel for appellant assigns ten errors.

The first to the admission of evidence as to the rental value of the piano from date of taking, is untenable.  Respondent, if entitled to the use of the instrument, was entitled to the value of that use, and we find evidence in the record of that value as assessed by the jury.

The second assignment is that it was error to admit evidence as to the nonentry of payments on the back of the note; that is, evidence was admitted to show that these payments had not been endorsed on the note until a short time prior to the trial.  We see no error here.

The third assignment is the most serious one in the case; that is to say, the admission of parol evidence, as it is claimed, to contradict or vary the note and mortgage.

The transaction, as in evidence, was about this: Respondent wanted to purchase a piano. Appellant is a dealer in pianos. Respondent, accompanied by her pastor, a Mr. Washington, went to the salesroom of appellant and told a salesman whom they met there, of her desire to purchase a piano. The salesman asked her how much she proposed to pay. She told him she could pay only $200; that she was not prepared to pay more than that. The salesman showed respondent and Mr. Washington a number of pianos and quoted prices on them; some at $200; others more or less; some new, others secondhand. Respondent expressing a preference for a secondhand one, priced at $200, the salesman, according to the testimony of respondent and Mr. Washington, showed her a new piano and endeavored to have her buy that. He quoted it at $200. So both these witnesses most positively testify. Mr. Washington asked the salesman how it was that they could sell a new piano for the same price as an old one, whereupon the salesman said that this new piano was named for a member of the family of the proprietor of the music house (appellant) and that the house wanted to get it on the market. Respondent still insisted that she preferred the secondhand piano; both she and Mr. Washington saying they liked its tone better. Respondent thereupon said she would take the secondhand piano at the price named, $200. Thereupon she handed the salesman a credit slip calling for a credit of $75 on the purchase of a piano. Respondent and Mr. Washington both testify that the salesman took this credit slip to the office in the salesroom and immediately came back to them and said that this credit slip was only good for and could only be used on the purchase of a new piano. The only contradiction at this point is that according to the salesman he did not have to go to the office with the credit slip, but that when he looked at it he saw that it called for a credit only on a new piano and at

once so informed respondent. At any rate, all agree that the salesman told respondent that it could not be applied on an old piano but only on a new one; that it could not be applied in the purchase of the second-hand piano respondent had selected. Thereupon, according to the positive testimony of respondent and Mr. Washington, respondent agreed to take the new piano at $200, finding that she could not use the credit slip in payment upon an old or secondhand piano. There is little contradiction of this. The salesman, asked by counsel for appellant if he had told respondent and Mr. Washington that the new piano was $275, answered, ''I may have shown them the new pianos. Ques. Did you tell either of them at that time? Ans. No, all the pianos have the tag price on them. Ques. Did you vary from it? Ans. I could not, because it is there in black and white.'' Whether respondent saw this tag or had her attention called to it, does not appear. Both respondent and Mr. Washington testify in the most positive manner that no price other than $200 was named as the price for this new piano. The salesman's only version of it is as above set out. The note and mortgage were then drawn up, presented to respondent and she signed both, paying $10 in cash, the salesman retaining the credit slip for $75. The piano was thereupon delivered to respondent, who retained it for nearly three years, making payments until she had paid in cash $145, exclusive of the $75, when appellant replevied it from her possession, claiming a balance still due on the basis of $275 being the price of the instrument.

During these years there was a continual dispute between the parties as to how much respondent owed on the piano, respondent insisting that she was entitled to a credit for the $75 called for in the credit slip which appellant had accepted; appellant claiming that the price of the piano was $275; that it had credited the $75 slip or order on its book account with

respondent in which it had entered the transaction from a sales slip made out by the salesman; and that when respondent signed the note she still owed $200, on which she then paid $10. Including this $10, appellant had credited respondent with $145, not crediting the $75 evidenced by the credit slip on the note.

Going back to the purchase of the piano and execution of the note and mortgage, it is in evidence that when the salesman handed them to respondent and she was asked to sign them, and was about to do so, Mr. Washington said: "Why do you sign a note without having it read?" Whereupon, according to Mr. Washington, the salesman said: "It is all right, that is the contract that we sell everything." The salesman testified very positively that both the mortgage and note were read by him to respondent. Respondent testified that she could write but could not read "to amount to anything." She at first testified that neither the note nor mortgage were read by or to her. On cross-examination she testified "they didn't read that chattel mortgage to me any more than they read it to the jury, not that much." Asked, "Did they" (meaning the salesman) "at that time tell you how much the balance was that was due?" She answered: "They said after I paid my money it would be $115, I think, $115 with interest, being interest on the $115 with six per cent; that would be what I had to pay after I had paid this $75 and the $10. Ques. Was that stated to you at the time you signed the papers? Ans. That was stated to me at the time I signed the papers right then and there what the amount would be."

So much for the facts as in evidence.

On these facts the court, at the instance of appellant, instructed the jury as follows:

"If you believe and find from the evidence in this case that defendant bought a piano from plaintiff for $275; that she received a credit on purchase price at

that time from plaintiff for $75, and then executed her note for $200, payable to its order, at the rate of $10 cash and $5 each month, with interest at six per cent per annum from date, and secured payment thereof by a chattel mortgage on said piano, in and by which she agreed that if she failed to make pay-ments as agreed by her, then plaintiff should be en-titled to the possession of said piano, and if you fur-ther find and believe from the evidence that on October 24, 1911, she was by reason of said note, indebted to plaintiff in any sum, then plaintiff is en-titled to recover the possession of said piano, and your verdict must be for the plaintiff.''

At the instance of respondent, the court in-structed the jury, in substance, that if they found and believed from the evidence that on November 30, 1908, plaintiff sold the piano to defendant for $200 and the order for $75 mentioned in the evidence is a partial payment on the piano, ''and if the jury find and believe from the evidence that the signature of defendant to the mortgage and note in question was obtained upon a false representation by plaintiff or its authorized agents as to the amount to be paid thereon, and the defendant signed it without knowing the amount and under the belief it was for the sum of $125, and not for an amount in excess thereof, and you further so find that said sum of $125 has been paid to plaintiff by defendant, or if you shall find that the mortgage and note was misread to defendant and she signed it when she was told by a representative or representa-tives of defendant, and believed that she was signing another and different one in amount, to-wit, one for $125, and that defendant did not or could not herself read such note, and that she was not guilty of any negligence in so signing the mortgage and note, then, your verdict must be for the defendant.''

Two instructions as to the amount of the verdict were given.

The principal contention by counsel for appellant is as to this first instruction and his very learned argument turns largely on his third assignment of error; that is, that the respondent was allowed to introduce parol evidence attacking the note and mortgage. It may be admitted that this first instruction is inartificially drawn. But the question for us here is, is it so defective and so misleading and so erroneous as to demand a reversal of this judgment? In the first place, it is not necessary to hold that the parol evidence attacked or contradicted the note and mortgage. Absent fraud, that cannot be done. [Jenkins Sons Music Co. v. Johnson, 175 Mo. App. 355, 162 S. W. 308; Ely v. Sutton, 177 Mo. App. 546, 162 S. W. 755, and the many cases there cited.] Fraud is here relied upon, but that fraud goes, not directly to impeach the note and mortgage, but to the claim of appellant that at the time of the execution of these papers respondent did so to evidence that a balance of $200 was due on the purchase of a piano at the price of $275. The testimony in the case, if believed by the jury, is overwhelming that respondent never undertook or agreed to buy any piano other than the one priced to her at $200. Granting that she read both papers; granting that she is bound by them and cannot be permitted to contradict them, absent fraud, it seems clear that respondent had a right to assume even from them, that she was to pay only $200. The salesman told her, in presenting the papers to her for signature, and after, as he says, having read them to her, "It is all right; that is the contract that (by which?) we sell everything." So that respondent may well have assumed, if she knew that the note called for the payment of $200, that as she was buying a piano at that figure it was all right to put $200 in the note, as that was what she was to pay, and that having turned over the credit slip calling for $75, which appellant accepted, and having paid $10 in cash, that the

two-hundred-dollar note would be credited with both of these payments. It is not necessary therefore to hold that her testimony tended to impeach or contradict the note. To the contrary it may be said to be consistent with it.

More accurately, it bore on the question of whether proper credit had been given upon the note. The note and mortgage might well stand as executed and yet the question would remain as to whether defendant still owed anything on the note. This, not in contradiction of the note but accepting it, challenging the correctness of the credits.

There is abundance of evidence tending to prove that respondent supposed she was buying a $200 piano and that she never intended to and never agreed to pay $275. Neither the note nor mortgage make any reference to $275 as the price of the piano she bought; in fact, they do not name any price, but call for $200, ten dollars of this to be paid in cash. The evidence is conclusive that respondent supposed she was buying the piano for the total price of $200. Along with the delivery of note respondent paid $10 cash, having before that turned over the credit slip for $75, and appellant credited the $10 on the note. Instead of crediting the $75 on the note, it credited it on a piano at the price of $275. It is clear that respondent never agreed to pay that price for any piano.

The use of the word "negligence" in this instruction, without explaining it, was not error. The cases in which it is held that to do so is error, are cases in which the gist of the action was negligence. That is not this case.

It is urged that by retention of the piano for so long a time and by overpaying the debt (according to what respondent claimed she owed), respondent is estopped from now setting up her defense. No such issue was raised below by objection or instruction. On the facts before us we cannot declare estoppel as

a matter of law. Claiming and obviously believing that she had paid in full for the instrument, respondent was under no obligation to return it. That she had constantly and consistently insisted on her purchase of the instrument at and for the price of $200, is very clear.

Other errors are assigned, but we do not consider them tenable, nor, in the view we take of the case, do we deem it necessary to discuss them.

We are admonished by statute (R. S. 1909, sec. 1850) to disregard any error or defect in the proceedings which shall not affect the substantial right of the adverse party, and by section 2082 not to reverse the judgment of the trial court unless we shall believe that error was committed against appellant and materially affecting the merits of the action. Applying these statutory provisions, we fail to find reversible error.

The judgment of the circuit court is affirmed. *Nortoni* and *Allen, JJ.,* concur.